**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DARNELL COOPER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 12-cv-5625** |
| | ) | |
| | ) | **Judge Edmond E. Chang** |
| **KARYN MORGAN** *et al.*, | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On two separate occasions, Plaintiff Darnell Cooper suffered painful and objectively serious burns as a result of excessively hot water in the showers at Stateville Correctional Center ("Stateville"). Following those injuries, Plaintiff requested that defendants provide him with medication to treat his pain and schedule him to see a doctor. All four defendants refused – and in some cases, simply ignored – Plaintiff's requests, thereby exacerbating Plaintiff's pain and preventing him from receiving adequate medical treatment. Those refusals violated Wexford's own treatment policies, which require nurses to (1) provide pain medication to all inmates who present with even minor burns and (2) schedule any inmate suffering from a burn to see a doctor, physician's assistant, or nurse practitioner.

Under settled Seventh Circuit law, Plaintiff's burns constituted an objectively serious medical condition. Moreover, defendants' failure to follow Wexford's own policies creates a triable issue as to whether defendants were deliberately indifferent to Plaintiff's condition, especially when combined with other evidence that defendants intentionally ignored Plaintiff's reasonable requests for treatment. Plaintiff's claims are supported by a variety of evidence, including his testimony regarding his interactions with defendants and the severe pain he was

suffering, Wexford's policies and procedures, and defendants' own, often contradictory, testimony regarding their duties and treatment obligations as Wexford nurses.

Defendants' motion for summary judgment turns the well-accepted standard of review on its head and, rather than construe all facts and draw all reasonable inferences in favor of the non-moving party, asks the Court to disregard all of Plaintiff's evidence and adopt their own version of events as a matter of law. Defendants suggest that this Court should ignore Plaintiff's unequivocal testimony regarding the severity of his injuries because Wexford's 30(b)(6) witness – *who has not been designated an expert in this case* – testified that Plaintiff's injuries were minor, based solely on a cursory review of Plaintiff's medical records while the deposition was ongoing. Defendants argue that Plaintiff could not have asked for pain medication or to see a doctor because they believe they would have written those requests down, even though they have no specific recollection of their interactions with Plaintiff. Finally, Defendants' argue that Plaintiff failed to exhaust his administrative remedies, but Plaintiff appealed his grievances through every layer of administrative review, and officials denied Plaintiff's grievance on the merits after reviewing his medical files. Defendants' motion should be denied.

## STATEMENT OF FACTS

### A. Wexford's Treatment Protocols

The Illinois Department of Corrections ("IDOC") has created nursing treatment protocols for treatment of various ailments, which Wexford has adopted. Plaintiff's Statement of Facts ("SOF") ¶ 16. Wexford nurses are trained on those protocols during the orientation process. SOF ¶ 17. Nurses are also provided with a set of treatment protocols to review and are shown exactly where the protocols are located at the facility. SOF ¶ 17.

One of IDOC's treatment protocols governs the treatment of burns. SOF ¶¶ 18-21. Under the protocol, a nurse is required to refer a patient presenting with any kind of burn, even a minor

burn, to a physician, physician's assistant, or nurse practitioner.  SOF ¶ 20.  If a patient has a burn that is more severe than a small superficial or minor burn, including a burn that causes blisters, the nurse is required to immediately call the physician on duty.  SOF ¶ 20.  If the patient has only a small superficial or minor burn, the nurse is required to schedule the patient to see a physician, physician's assistant, or nurse practitioner at the next available sick call.  SOF ¶ 20. Nurses are also required to reassess minor burns after two to four hours, and, if the patient is still in pain, must alert the physician on call.  SOF ¶ 21.

The treatment protocol notes that even minor and superficial burns "are painful."  SOF ¶ 18.  Thus, a nurse is required to provide pain medication to any patient suffering from a minor or superficial burn.  SOF ¶ 21.  Specifically, a nurse must give the patient either one to two 325 milligram tablets of acetaminophen three times a day for three days, or one 400 milligram tablet of ibuprofen four times per day for three days.  SOF ¶ 21.  Under Wexford's policies, a treatment protocol authorizes a nurse to carry out the treatment set forth in the protocol – including providing pain medication – without the need to obtain further authorization from a physician. SOF ¶ 22.  On multiple occasions, without consulting a doctor, Wexford nurses at Stateville have provided Plaintiff with pain medication for which he had no prescription.  SOF ¶ 26.

### B. Plaintiff is Burned in the Shower and Defendants Deny him Medical Treatment

On June 16, 2011, Plaintiff suffered a painful burn from excessively hot shower water. SOF ¶ 1.  The next morning, Plaintiff noticed discharge on his shirt from the burn and observed that his skin was disfigured, discolored, and blistered.  SOF ¶ 2.  He requested medical attention from Stateville correctional officers, but they refused to assist.  SOF ¶ 2.

On June 18, 2011, Defendant Karyn Morgan visited Plaintiff's cell while passing out medication in F-House.  SOF ¶ 3.  Plaintiff showed his burns to Morgan, explained that he was in pain, and requested medical attention, including pain medication and a visit to see a doctor.

3

SOF ¶ 3.  Morgan ignored Plaintiff's request.  SOF ¶ 3.  According to Wexford, if a nurse is

passing out medication and encounters an inmate who complains of having suffered a burn, the

nurse is supposed to perform an assessment of the patient at that time.  SOF ¶¶ 19; 24.  It would

be "totally inappropriate" for a nurse to ignore an inmate's request to be placed on sick call or to

see a doctor for pain medication.  SOF ¶ 24.

On Monday, June 20, 2011, Plaintiff was taken to the emergency room, where he told

Defendant Angelique Matuzas that he had been burned and had been in pain ever since.  SOF ¶

4.  Cooper requested that Matuzas provide him with pain medication and arrange for him to see a

doctor.  SOF ¶ 4.  Matuzas refused, and told Plaintiff that the doctor was not in, even though

doctors are always available on-site on weekdays pursuant to Wexford policy.  SOF ¶¶ 4; 23.

Plaintiff saw Matuzas again the next day, told her he was in pain, and again requested that she

provide him with pain medication and allow him to see a doctor.  SOF ¶ 6.  Matuzas denied

Plaintiff's request and told a security officer Plaintiff was "making trouble."  SOF ¶ 6.

On June 22, 2011, Plaintiff requested pain medication, a visit with a doctor, and other

treatment from Defendant Stacey Headlee.  SOF ¶ 7.  Headlee refused all of Plaintiff's requests

and offered no explanation for her failure to treat him.  SOF ¶ 7.

## C. Plaintiff Suffers a Second Burn and Defendants Again Deny Him Treatment

On June 30, 2011, Plaintiff again suffered a burn, this time on his head, from excessively

hot shower water in F-House.  SOF ¶ 8.  On July 1, 2011, Morgan visited Plaintiff's cell while

passing medication.  SOF ¶ 9.  Plaintiff showed Morgan his burn and requested that she provide

him with pain medication and schedule him to see a doctor.  SOF ¶ 9.  Morgan walked away

from Plaintiff without providing him any medical treatment.  SOF ¶ 9.

On July 1, 2011 or July 2, 2011, Defendant Kent Ocupe visited Plaintiff's cell while

passing medication.  SOF ¶ 11.  Plaintiff showed Ocupe his burns, and requested that Ocupe

schedule Plaintiff to see a doctor and provide him with medical attention or pain medication, but Ocupe ignored his requests. SOF ¶ 11.

Three of the defendants, Morgan, Matuzas, and Ocupe, do not recall having any interactions with Plaintiff and do not recall whether Plaintiff requested pain medication or to see a doctor. SOF ¶¶ 12-14. Headlee does recall seeing Plaintiff for his burns. SOF ¶ 15. She recalls that his skin was discolored and "showed proof" that he had been burned. SOF ¶ 15. She does not recall whether Plaintiff asked to see a doctor or mentioned his pain. SOF ¶ 15.

### D. **Plaintiff's Grievances**

On June 20, 2011, Plaintiff submitted a grievance complaining about the lack of medical treatment he had received for the June 16, 2011 burn. SOF ¶ 32. In the grievance, he described Morgan as "light skinned, big brown eyes with blond hair" and stated that she was wearing "a 2-piece green nurses outfit." SOF ¶ 32. Plaintiff requested that IDOC turn down the temperature in the F-House showers, suspend the officials who denied him medical attention, and pay him $15,000 for each official who denied him medical attention. SOF ¶ 32.

On July 5, 2011, Plaintiff filed a second grievance, in which he complained about the lack of medical treatment he received for both burns. SOF ¶ 33. Plaintiff complained that he still had not received any pain medication despite several encounters with medical personnel, and incorporated his June 20, 2011 grievance by reference. SOF ¶ 33.

On September 1, 2011, Plaintiff submitted a third grievance in which he again complained about the lack of medical treatment he had received for his burns. SOF ¶ 34. Plaintiff specified each date on which he had requested medical treatment from defendants and stressed that he had not been provided with any pain medication. SOF ¶ 34. Plaintiff incorporated the grievances he had filed on June 30, 2011 and July 20, 2011. SOF ¶ 34. When Plaintiff submitted these grievances in 2011, he did not know the defendants' names. SOF ¶ 38.

5

On December 2, 2011, an IDOC employee authored a memorandum to the Grievance Office stating that she had reviewed Plaintiff's medical file and that Plaintiff was "healing well." SOF ¶ 35. On December 27, 2011, Grievance Officer Anna McBee reviewed Plaintiff's July 5, 2011 grievance, which incorporated his June 20, 2011 grievance. SOF ¶ 36. McBee stated, "[i]ssue appears to be resolved as grievant appears to be receiving appropriate medical care at this time." SOF ¶ 36. On January 3, 2012, then-Warden Marcus Hardy concurred with McBee's recommendation. SOF ¶ 36. Plaintiff appealed, and on June 1, 2012, the IDOC Administrative Review Board denied Plaintiff's appeal, stating that it had reviewed "all available information," and that his "medical needs are being addressed by the Stateville Correctional Center Administration, in accordance with established policies and procedures." SOF ¶ 37.

## ARGUMENT

### I.  Standard of Review

Summary judgment is appropriate where the evidence demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Greeno v. Daley*, 414 F. 3d 645, 652 (7th Cir. 2005). The Court must construe all facts and draw all reasonable inferences in favor of the non-moving party. *Greeno*, 414 F. 3d at 652.

A claim that defendants were deliberately indifferent to a serious medical need has both a subjective and an objective component. Under the objective component, an inmate must demonstrate that his medical condition is "objectively, sufficiently serious." *Id*. at 653. To satisfy the subjective component, "a prisoner must demonstrate that prison officials acted with a sufficiently culpable state of mind." *Id*. However, a prisoner need not establish that the officials intended the harm that resulted from their conduct. Rather, "it is enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk." *Id*.

6

## II.      This Court Should Disregard Defendants' Reliance on an Undisclosed Expert

Throughout their Motion and Rule 56.1 Statement of Facts, defendants attempt to use Wexford's 30(b)(6) witness, Dr. Arthur Funk, as an expert on the seriousness of Plaintiff's injuries and the adequacy his treatment.  Defendants state, for example that "Dr. Funk . . . testified that the condition Mr. Cooper suffered was not one that any reasonable person would even go to see a physician."  Mot. at 5.  Defendants' Rule 56.1 Statement of Facts ("DSOF") similarly cites Dr. Funk's testimony to support a variety of medical conclusions, including: "Mr. Cooper's burn as presented to the CMT on June 18, 2011 was a first degree burn"; "first degree burns require no treatment," and "would not leave a scar"; "the risk of infection in a first degree burn is very slight"; "A first degree burn would cause discomfort for the first 24 hours, the next 24-48 hours would have discomfort limited to skin contact in that area and after three days they have no discomfort at all"; and "It would be reasonable that a patient would not seek consultation with a physician for a burn like Mr. Cooper suffered."  DSOF ¶¶ 32-33; 36-37; 75; 78.

Defendants' reliance on Dr. Funk as a medical expert in this case is improper. Defendants did not designate Dr. Funk as an expert.  Rather, defendants informed the Court that they would not be relying on an expert in this case, leading the Court to enter a July 16, 2015 minute order, stating "[b]oth sides reported that there will be no expert discovery."  Docket No. 161.  Having failed to designate Dr. Funk as an expert, defendants cannot now use his testimony to opine on the severity of Plaintiff's injuries or the adequacy of his treatment.  *See Tribble v. Evangelides*, 670 F. 3d 753, 758 (7th Cir. 2012) ("Under Rule 37(c)(1), non-disclosed expert testimony is automatically excluded unless the failure was substantially justified or is harmless").

Even if Dr. Funk were an appropriate expert, his testimony should still be disregarded, as Dr. Funk did not examine or treat Plaintiff and had never seen Plaintiff's medical records prior to the deposition.  Resp. to DSOF ¶ 75.  Rather, Dr. Funk flipped through Plaintiff's medical

records during the deposition, diagnosing the severity of Plaintiff's burns based on a brief review of isolated treatment notes written by medical professionals with whom Dr. Funk had not consulted. Resp. to DSOF ¶ 75. Dr. Funk's testimony regarding the seriousness of Plaintiff's injuries and the adequacy of his treatment is thus not reliable and should be disregarded.

## III.  A Genuine Dispute of Material Fact Exists Regarding Whether Plaintiff Suffered an Objectively Serious Medical Condition

"An objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *King v. Kramer*, 680 F. 3d 1013, 1018 (7th Cir. 2012). Pain from minor burns constitutes a serious medical condition. *See O'Malley v. Litscher*, 465 F. 3d 799, 805 (7th Cir. 2006) (minor burns caused by lying in one's own vomit). "The medical condition need not be life-threatening; it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gomez v. Randle*, 680 F. 3d 859, 865 (7th Cir. 2012).

Under *O'Malley*, Plaintiff's burns were an objectively serious medical condition as a matter of law. Defendants nonetheless argue that Plaintiff's burns were not objectively serious because they did not mandate treatment or require a doctor's attention. Mot. at 3. That argument contradicts *O'Malley*, which defendants do not cite. Defendants' argument is also contradicted by Wexford's own policies, which state that even minor burns are painful, and mandate both that inmates receive pain medication even for minor and superficial burns and that inmates be scheduled to see a doctor for any burn. SOF ¶¶ 18-22. It is true that Plaintiff did not, in fact, see a doctor. That is one of the reasons Plaintiff filed this action. But defendants' failure to follow proper protocol does not change the fact that Plaintiff *should have* received medical treatment

and a doctor's evaluation. Defendants' failure to provide proper treatment resulted in the unnecessary and wanton infliction of pain. Thus, Plaintiff's injuries were objectively serious.

Defendants also argue that Plaintiff's injuries could not have been objectively serious because "plaintiff's skin was exposed to the water for only a short period of time and the pain or damage was minimal, if at all." Mot. at 3. That is pure speculation. Defendants have presented no evidence regarding whether a patient can suffer a painful burn despite a brief exposure to scalding water. More importantly, defendants' argument is directly contradicted by Plaintiff's repeated requests for pain medication and testimony that his burns were painful. SOF ¶¶ 1-11.

Defendants next argue that Plaintiff could not have suffered an objectively serious injury because he did not notice a burn until the following day. As Plaintiff testified in his deposition, however, he only failed to notice the burn insofar as he did not see the actual burn on his skin until the next day, when he saw discharge on his shirt and observed that his skin was disfigured, discolored, and blistered. SOF ¶¶ 1-2. Plaintiff began experiencing pain on June 16th, immediately after the burn occurred. SOF ¶¶ 1-2; Response to DSOF ¶ 40.

Defendants also argue that Plaintiff must have suffered a minor burn because a medical technician did not note blisters on his skin when the technician examined Plaintiff on June 18th. But Plaintiff testified that he observed blisters on his skin after he was burned. SOF ¶ 2. The technician's evidence therefore merely creates a factual dispute regarding whether Plaintiff's burns blistered. In all events, Wexford's treatment protocol expressly states that even minor burns, which do not cause blisters, are painful and require pain medication. SOF ¶¶ 18; 21.

Finally, Defendants argue that Plaintiff could not have suffered a serious medical condition because his injuries healed on their own. However, a condition need not cause permanent injury if untreated in order to be serious. Rather, a condition qualifies as a serious

medical condition if it would result in "wanton infliction of pain if not treated." *Gomez*, 680

F.3d at 865. Defendants' position is also inconsistent with *O'Malley*, which recognized that the

pain from minor burns constitute an objectively serious medical condition, even though the burns

in *O'Malley* presumably would heal on their own. *O'Malley*, 465 F.3d at 805.

In all events, there is a disputed issue of material fact as to whether Plaintiff's injuries

fully healed without medical treatment. Plaintiff testified that he has a scar on his head as a

result of the second burn. Resp. to DSOF ¶ 73. Moreover, a Wexford doctor noted evidence of a

healed superficial burn on January 10, 2012, more than six months after Plaintiff suffered his

supposedly minor burn, giving rise to the reasonable inference that the burn caused lasting

damage. Resp. to DSOF ¶ 73.

## IV.   A Genuine Dispute of Material Fact Exists Regarding Whether Defendants Were Deliberately Indifferent to Plaintiff's Medical Condition

A reasonable jury could also find that defendants were deliberately indifferent to

Plaintiff's serious medical condition. "Deliberate indifference may occur where a prison

official, having knowledge of a significant risk to inmate health or safety, administers blatantly

inappropriate medical treatment." *Perez v. Fenoglio*, 792 F. 3d 768, 777 (7th Cir. 2015). "[T]o

prevail on an Eighth Amendment claim a prisoner is not required to show that he was literally

ignored." *Greeno*, 414 F. 3d at 653-54. Rather, officials "must provide inmates with medical

care that is adequate in light of the severity of the condition and professional norms." *Perez*, 792

F. 3d 777. Even a brief delay in treatment may constitute deliberate indifference. *Id*. at 778.

Here, Plaintiff has presented evidence that defendants refused to provide him with pain

medication or schedule him to see a doctor even though those steps were mandated by

Wexford's own policies. Defendants' failure to follow the treatment protocol is itself sufficient

to defeat summary judgment. *See Mata v. Saiz*, 427 F.3d 745, 757-58 (10th Cir. 2005) (reversing

10

summary judgment where nurse's violation of published health-care requirements was circumstantial evidence that she knew of substantial risk of harm); *Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 542-43 (6th Cir. 2008) (paramedic's failure to follow established treatment protocols could constitute deliberate indifference).

Moreover, ample evidence exists in the record, beyond defendants' failure to follow the treatment protocol, to create a disputed issue of material fact as to whether defendants were deliberately indifferent to Plaintiff's medical condition. Plaintiff alleges that two of the defendants, Morgan and Ocupe, ignored Plaintiff's requests for medical attention while they were passing medication in F-House. Defendants claim the "undisputed evidence" is that nurses have "no duty" to assess an inmate while passing medication. Mot. at 7. But that fact is anything but undisputed. Indeed, Wexford's 30(b)(6) representative testified that it would be "totally inappropriate" and contrary to Wexford's policies for a Wexford nurse to ignore an inmate's request for medical attention because the nurse was passing medication. SOF ¶ 24. Ocupe and Headlee similarly testified that their job duties included screening patients with medical conditions while passing medication, and that nurses should perform an assessment of the patient and obtain treatment for the inmate if warranted. SOF ¶¶ 30-31.

Plaintiff further testified that when he complained to Matuzas about his pain and asked to see a doctor, she said he was "making trouble" and called a security guard to escort Plaintiff back to his cell. SOF ¶ 6. Plaintiff similarly alleged that Headlee denied Plaintiff's request for pain medication without explanation. SOF ¶ 7. Those allegations create a reasonable basis for a jury to conclude that Matuzas and Headlee were deliberately indifferent to Plaintiff's medical needs.

Defendants advance a variety of other arguments as to why they were not deliberately indifferent to Plaintiff's medical needs. First, Defendants argue that the "totality of the medical

care" indicates that Plaintiff received appropriate treatment. Mot. at 6; 9. But Plaintiff's various interactions with medical professionals did not result in the meaningful treatment required under Wexford's treatment protocols: pain medication and a visit with a physician. The fact that Plaintiff received perfunctory treatment from some Stateville personnel does not immunize defendants from a deliberate indifference claim. As the Seventh Circuit has recognized, "[i]f all the Eighth Amendment required was that prison officials provide some immediate and ongoing attention, they could shield themselves from liability (and save considerable resources) by shuttling sick or injured inmates to perfunctory medical appointments wherein no meaningful treatment is dispensed." *Perez*, 792 F. 3d at 777.[1]

Second, defendants ask this Court to disregard Plaintiff's allegations because they are inconsistent with what defendants believe they would have – or should have – done. For example, defendants claim that Plaintiff could not have requested pain medication from Headlee because "[h]ad plaintiff complained of pain she certainly would have noted it in the record." Mot. at 8. Defendants similarly argue that it is "unlikely that three different providers all failed to note what plaintiff is now claiming was constant complaints of pain," that a request to see a doctor "would be documented," and that "it is unlikely that plaintiff made this request to three different providers and none of them documented it." Mot. at 9-10.

However, "unlikely" does not mean "undisputed," and defendants cannot eliminate disputed issues of material fact by pretending that those disputes do not exist. Plaintiff's testimony is clear and unequivocal: he asked each of the defendants for pain medication and a chance to see a doctor and each of them refused. SOF ¶¶ 3-11. Defendants' testimony, by contrast, is anything but unequivocal. Three of the four defendants have no recollection

---

[1] Notably, Plaintiff did not even receive all the treatment he was prescribed. The CMT who saw Plaintiff on June 18th ordered daily dressing changes, but Plaintiff's bandages were not changed until June 20th.

whatsoever of any interactions with Plaintiff. SOF ¶¶ 12-14. The fourth defendant, Headlee, remembers treating Plaintiff for burns but does not recall whether he asked her for pain medication or to see a doctor. SOF ¶ 15. Plaintiff's testimony that he requested pain medication is, therefore, essentially uncontroverted, and defendants cannot obtain summary judgment based on after-the-fact claims about what they "would have" done or what they believe is "likely."

Third, defendants argue that no jury could believe Plaintiff was complaining of pain sufficient to warrant pain medication given the "uncontroverted" evidence of Plaintiff's "minor burn." Mot. at 9-10. But Plaintiff testified he was in pain, and Wexford's policy for treating burns confirms that even minor burns are painful and require pain medication. SOF ¶¶ 18; 21. Moreover, there is a genuine dispute as to whether Plaintiff's burns were minor, as Plaintiff testified that his burn blistered and that he has a permanent scar on his back. SOF ¶¶ 2, 73, 77.

Fourth, defendants argue that they were not deliberately indifferent because Plaintiff has not demonstrated a permanent injury. But the prolongation of his pain *is* Plaintiff's injury. "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F. 3d 742, 753 (7th Cir. 2011). Even if Plaintiff were required to show an injury beyond the prolongation of his pain, Plaintiff alleges that he has suffered a permanent scar as the result of defendants' failure to provide adequate treatment. Resp. to SOF ¶¶ 73; 77. Defendants claim that this Court should disregard Plaintiff's testimony that he suffered a permanent scar because Plaintiff is not a doctor. Mot. at 12-13. But one does not need to be a doctor to recognize a scar, and Plaintiff's testimony should not be disregarded on this issue.

Finally, defendants claim that they were not deliberately indifferent to Plaintiff's medical needs because Plaintiff could have obtained pain medication on his own through Stateville's

commissary.  That is disputed: Plaintiff testified that, to his knowledge, over-the-counter pain medication was not available in the commissary in June and July 2011, and none of the defendants ever told defendant he could obtain pain medication from the commissary to treat his burns.  SOF ¶ 29.  Regardless, defendants are medical professionals responsible for treating inmates' medical conditions, including pain.  Defendants cannot avoid their duty to provide Plaintiff with constitutionally adequate medical treatment by asserting that Plaintiff may have been able to treat his own injuries elsewhere.

## V.    Plaintiff Exhausted His Administrative Remedies

Finally, defendants argue that Plaintiff's claims should be dismissed because he failed to properly exhaust his administrative remedies.  "Exhaustion is an affirmative defense, and the burden of proof is on the defendants." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).[2]

Defendants argue that Plaintiff failed to exhaust his administrative remedies because his grievances did not reference the defendants by name or adequately describe their conduct. Defendants cite Section 504.810(b) of the Illinois Administrative Code for the proposition that "grievances *must* include 'the name of the person who is the subject of or is otherwise involved with the complaint."  Mot. at 15.  Defendants' argument fails to include the very next sentence of Section 504.810(b), which states, "[t]his provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible."  20 Ill. Adm. Code § 504.810(b).  That is precisely what Plaintiff did as to Defendant Morgan in his June 20, 2011 grievance, where he

---

[2] In *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the Seventh Circuit held that disputes regarding exhaustion should be resolved prior to the beginning of merits discovery, because "[i]f merits discovery is allowed to begin before that resolution, the statutory goal of sparing federal courts the burden of prisoner litigation . . .  will not be achieved." *Id.* at 742.  Here, while defendants raised exhaustion as an affirmative defense, they made no effort to place the issue before the Court prior to the beginning of merits discovery.

described Morgan as "light skinned, big brown eyes with blond hair" and stated that she was wearing "a 2-piece green nurses outfit."  SOF ¶ 32.

And, because IDOC adjudicated Plaintiff's grievances on the merits and expressly considered Plaintiff's medical records in reaching its decision, it is irrelevant that Plaintiff did not include a similar description for the other defendants.  SOF ¶¶ 35-37.  As the Seventh Circuit has held, "[w]here prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense."  *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).

Here, the Grievance Officer reviewed Plaintiff's medical records, which reflected the medical treatment Plaintiff received from defendants, in denying his grievance.  Similarly, the IDOC Administrative Review Board reviewed "all available information" in resolving Plaintiff's appeal.  Neither suggested that Plaintiff's grievances were procedurally deficient.  Rather, the Grievance Officer and Administrative Review Board concluded that Plaintiff had received appropriate treatment.  SOF ¶¶ 35-37.  Plaintiff's grievances thus were "rejected on the merits at every stage of review without any indication from prison officials that [they were] procedurally deficient," *Maddox*, 655 F.3d at 721, and defendants cannot meet their burden of establishing that Plaintiff failed to exhaust his administrative remedies.[3]

## **CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment should be denied.

---

[3] The cases defendants rely on are inapposite.  In *Palmer v. Fenoglio*, No. 10-cv-718, 2012 WL 1466562 (S.D. Ill. April 2, 2012), the court held that the plaintiff had not exhausted his remedies as to the defendant because the relevant grievance was filed before plaintiff ever saw the defendant.  *Id.* at *5-6. Similarly, in *Davis v. Wahl*, No. 10-cv-00971, 2012 WL 6759031 (S.D. Ill. Dec. 6, 2012), the plaintiff did not file his grievance against the defendant until after the litigation began.  *Id.* at *3.

Dated: November 10, 2015               Respectfully submitted,

                                       /s/ Christopher F. Allen

                                       Jon A. Geier
                                       Christopher F. Allen
                                       Alex Maturi
                                       Paul Hastings LLP
                                       71 South Wacker Dr.
                                       45th Floor
                                       Chicago, IL  60606
                                       Telephone:  (312) 499-6000
                                       Facsimile:  (312) 499-6100
                                       Email:
                                       christopherallen@paulhastings.com
                                       *Counsel for Plaintiff Darnell Cooper*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 10th day of November 2015, I caused to be served on all parties of record a true and correct copy of **Plaintiff's Response to Defendants' Motion for Summary Judgment** by filing such document through the Court's Electronic Case Filing System.

<u>/s/ Alex J. Maturi</u>

Alex Maturi
Paul Hastings LLP
71 South Wacker Dr.
45th Floor
Chicago, IL 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100
Email: alexmaturi@paulhastings.com
*Counsel for Plaintiff Darnell Cooper*