**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DARNELL COOPER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.  12-cv-5625** |
| | ) | |
| **KARYN MORGAN** *et al.*, | ) | |
| | ) | **Judge Edmond E. Chang** |
| **Defendants.** | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**PLAINTIFF DARNELL COOPER'S
OBJECTIONS AND RESPONSES TO DEFENDANTS'
LOCAL RULE 56.1(a)(3) STATEMENT OF FACTS**

Plaintiff Darnell Cooper ("Plaintiff") hereby answers, objects, and otherwise responds to

Defendants' Local Rule 56.1(a)(3) Statement of Facts as follows:

STATEMENT OF FACT NO. 1:

Darnell Cooper, Inmate No. N71947, is an inmate at Stateville Correctional
Center and has been since May 26, 2011, serving a 35 year sentence given in 2010. Exhibit "A,"
Deposition of Darnell Cooper, p. 6-8.

**RESPONSE NO. 1:**

**Undisputed.**

STATEMENT OF FACT NO. 2:

Darnell Cooper is not trained as a certified medical technician, a nurse or a
physician. Ex. A, pp. 13-14.

**RESPONSE NO. 2:  Plaintiff objects to Paragraph 2 as unsupported by the cited record.**

*See* **Fed. R. Civ. P. 56(c); Local Rule 56.1(a).  Otherwise, undisputed.**

STATEMENT OF FACT NO. 3:

        Mr. Cooper is on several medications that affect his memory related to his diagnosis of depression schizophrenia. Ex. A, p. 129, 132.

**RESPONSE NO. 3:  Disputed.  Plaintiff objects to Paragraph 3 as unsupported by the cited record.  *See* Fed. R. Civ. P. 56(c); Local Rule 56.1(a).  The portions of Plaintiff's testimony cited in Paragraph 3 indicate only that Plaintiff is currently on medications, and that he had been diagnosed with depression and schizophrenia.  Plaintiff later testified that he thinks one of these medications may affect his memory, but that he is not sure.  (Cooper Dep.[1] 130:2-8.)**

STATEMENT OF FACT NO. 4:

        Mr. Cooper would defer to the healthcare providers as to whether his burn was healing or getting better. Ex. A, pp. 58-62, 100.

**RESPONSE NO. 4:  Disputed.  Plaintiff objects to Paragraph 4 as unsupported by the cited record.  *See* Fed. R. Civ. P. 56(c); Local Rule 56.1(a).  With respect to the facts stated in Paragraph 4, the portions of the record cited in Paragraph 4 indicate only that Plaintiff could not tell whether the burn on his back was healing during the period between his encounter with Nurse Headlee on June 22, 2011 and June 30, 2011, and would therefore defer to a medical provider to make that specific determination.  (Cooper Dep. 60:19-62:4.) Plaintiff's testimony on page 100 of the record cited in Paragraph 4 addressed whether he knew the state of his burn as of the date of his deposition, and includes no reference to a health care provider.  (Cooper Dep. 100:12-24.)**

---

[1] "Cooper Dep." refers to the transcript of the July 15, 2015 deposition of Plaintiff Darnell Cooper, located at Docket No. 169.

STATEMENT OF FACT NO. 5:

           Mr. Cooper did not know how to treat a burn in June or July 2011. Ex. A, pp. 141-42.

**RESPONSE NO. 5: Disputed. Plaintiff objects to Paragraph 5 as unsupported by the cited record. *See* Fed. R. Civ. P. 56(c); Local Rule 56.1(a). The portion of Plaintiff's testimony cited in Paragraph 5 indicates that he knew that the proper treatment of a burn included the provision of pain medication and consultation with a doctor, but did not know specifically what additional treatment the doctor would provide for the burn. (Cooper Dep. 142:5-8 ("Q. You didn't know how to treat a burn at all as of June and July of 2011, correct? A. I knew I needed pain medication to remedy the pain and to see the doctor.").)**

STATEMENT OF FACT NO. 6:

           Mr. Cooper never went to try to go to the commissary to get Ibuprofen or Tylenol for the pain. Ex. A, p. 120.

**RESPONSE NO. 6: Plaintiff objects to Paragraph 6 as unsupported by the cited record. *See* Fed. R. Civ. P. 56(c); Local Rule 56.1(a). The portion of Plaintiff's testimony cited in Paragraph 6 does not reference whether plaintiff tried or did not try to go to the commissary. (Cooper Dep. 120:1-24.)**

STATEMENT OF FACT NO. 7:

           Mr. Cooper had no other contact with the defendants after July 2, 2011. Ex. A, p. 72.

**RESPONSE NO. 7: Disputed. Plaintiff objects to Paragraph 7 as unsupported by the cited record. *See* Fed. R. Civ. P. 56(c); Local Rule 56.1(a). The portion of Plaintiff's testimony cited in Paragraph 7 indicates only that he does not remember whether he had any interactions with any of the Defendants related to his burns or this lawsuit, but that he may have interacted with them at some point after July 2, 2011. (Cooper Dep. 72:4-23.)**

STATEMENT OF FACT NO. 8:

        Nurse Morgan was employed as a licensed registered nurse by Wexford, working at Stateville, from March 2011 to March 2012. Ex. B, Transcript from Karyn Morgan, RN's discovery deposition, pp. 12, 17-18.

**RESPONSE NO. 8:** **Undisputed.**


STATEMENT OF FACT NO. 9:

        Nurse Morgan does not have any handwritten progress notes in Mr. Cooper's chart, other than one time Mr. Cooper refused medication pass on January 2, 2012 and one administration of Risperdal on July 1, 2011. Ex. B, p. 91, Ex. G, Darnell Cooper's Medical Records, pp. 26, 74.

**RESPONSE NO. 9:** **Undisputed.**


STATEMENT OF FACT NO. 10:

        Nurse Morgan was trained in the treatment of burns including making assessments of burns and pain caused from burns. Ex. B, pp. 40-42.

**RESPONSE NO. 10:** **Undisputed, but add that in the portion of testimony cited in Paragraph 10, Morgan stated that she was taught that when encountering a patient with a burn, she was supposed to "assess it and to have the doctor look at it" and that her assessment should include "looking at it, assessing the skin area, seeing if it was reddened, blistering, [or if there was] any kind of charred skin," and also speaking with the patient about how he was burned, whether he was in pain, and how he would rate the pain. (Morgan Dep. [2] 40:14-42:12.) Then, Morgan was supposed to "take care of it accordingly." (Morgan Dep. 42:10-13.)**


STATEMENT OF FACT NO. 11:

        Nurse Matuzas is a licensed practical nurse at Stateville for Wexford from July 2010 through November 2011. Ex. C, Angela Matuzas discovery deposition, pp. 10, 16, 17.

---

[2] "Morgan Dep." refers to the transcript of the June 3, 2015 deposition of Defendant Karyn Morgan, located at Docket No 169-1.

**RESPONSE NO. 11:  Undisputed that Matuzas was a licensed practical nurse at Stateville, employed by Wexford, from July 2010 through November 2011.**

STATEMENT OF FACT NO. 12:

Nurse Matuzas saw plaintiff on one occasion, June 21, 2011 and she gave him ointment and changed his bandages. Ex. A, p. 128, Ex. G, p. 8.

**RESPONSE NO. 12:  Disputed.  Plaintiff objects to Paragraph 12 as mischaracterizing the evidence.  Matuzas saw Cooper at least two times, once on June 20, 2011, and once on June 21, 2011.  (Cooper Dep. 127:23-128:1.)  The portion of Plaintiff's testimony cited in Paragraph 12 does not indicate whether or not Matuzas saw Plaintiff on other occasions. Undisputed that when Matuzas saw Plaintiff on June 21, 2011, she applied silvadine to his burn and changed his bandages.**

STATEMENT OF FACT NO. 13:

Ms. Matuzas complied with the applicable standard of care in treating Mr. Cooper. Ex. C, pp. 83-84.

**RESPONSE NO. 13:  Disputed.  Plaintiff objects to Paragraph 13 as unsupported by the cited record, inadmissible as a legal conclusion, and improper lay opinion testimony.  *See* Fed. R. Civ. P. 56(c); Local Rule 56.1(a).  In the portion of the testimony cited in Paragraph 13, Matuzas stated only that she believed she complied with the applicable standard of care during her interactions with Plaintiff.  (Matuzas Dep. [3] 83:25-84:3.)  Matuzas acknowledged that her belief that she complied with the applicable standard of care was based solely on her assumption that whatever treatment she provided to Plaintiff must have been specifically called for by a doctor's order, which she does not recall ever seeing. (Matuzas Dep. 84:9-85:9.)  Matuzas does not know who Plaintiff is and does not recall**

---

[3] "Matuzas Dep." refers to the transcript of the July 13, 2015 deposition of Defendant Angelique Matuzas, located at Docket No. 169-2.

whether she ever spoke with Plaintiff.  (Matuzas Dep. 60:5-11.)  Wexford's treatment

protocols require Wexford nurses to, among other things, provide pain medication to and

arrange for a doctor to see inmates with even minor burns.  (Exhibit 7[4], pgs. 5-6.)  On both

June 20, 2011 and June 21, 2011, when Plaintiff showed Matuzas his burns, requested pain

medication, and asked to see a doctor, Matuzas refused.  (Cooper Dep. 50:13-51:10; 56:6-

57:14.)


STATEMENT OF FACT NO. 14:

                Kent Ocupe was a licensed practical nurse hired by Wexford at the time of the
allegations, and is now a registered nurse. Ex. D, Deposition Transcript of Kent Ocupe, RN, pp.
8, 12-13, 25

**RESPONSE NO. 14:**  **Undisputed.**


STATEMENT OF FACT NO. 15:

                Nurse Ocupe had training as to treatment of burns including determining the type
of burn, severity of the burn and treatment for different burns. Ex. D, pp. 85-86.

**RESPONSE NO. 15:  Plaintiff objects to Paragraph 15 as vague, ambiguous, and**

**unsupported by the cited record.**  *See* **Fed. R. Civ. P. 56(c); Local Rule 56.1(a).  Undisputed**

**that, at an unknown time prior to his deposition on June 12, 2015, Ocupe received training**

**as to the treatment of burns, including determining the type of burn, severity of the burn,**

**and treatment for different kinds of burns.   In the portion of the testimony cited in**

**Paragraph 15, Ocupe testified only about the training that he received when he went to**

**school to be a Registered Nurse.  (Ocupe Dep. [5] 85:10-86:16.)  Defendants offer no evidence**

**regarding when Ocupe received this training, and Ocupe did not obtain his license as a**

---

[4] The numbered exhibits referenced throughout this response are the Exhibits to Plaintiff's Local Rule 56.1(b)(3)(C)
Statement of Facts, filed contemporaneously with this response.
[5] "Ocupe Dep." refers to the transcript of the July 12, 2015 deposition of Defendant Kent Ocupe, located at Docket
No. 169-3.

**Registered Nurse until the week before his deposition was taken in this matter. (Ocupe**

**Dep. 25:15-20.)**

STATEMENT OF FACT NO. 16:

Nurse Headlee was a registered nurse working at Wexford at the time of the allegations in the complaint. Ex. E, Deposition transcript of Stacey Headlee, RN, p. 24.

**RESPONSE NO. 16:  Undisputed.**

STATEMENT OF FACT NO. 17:

Nurse Headlee was taught and trained in the treatment of burns. Ex. E p. 64.

**RESPONSE NO. 17:  Undisputed.**

STATEMENT OF FACT NO. 18:

The care provided by Nurse Headlee was reasonable and appropriate. Ex. E, p. 170.

**RESPONSE NO. 18:  Disputed.  Plaintiff objects to Paragraph 18 as unsupported by the**

**cited record, inadmissible as a legal conclusion, and improper lay opinion testimony. *See***

**Fed. R. Civ. P. 56(c); Local Rule 56.1(a).  In the portion of testimony cited in Paragraph 18,**

**Headlee testified only that it was her opinion that the treatment she provided was**

**reasonable and appropriate.  (Headlee Dep. [6] 170:7-17.)  Wexford's treatment protocols**

**require Wexford nurses to, among other things, provide pain medication to and arrange**

**for a doctor to see inmates with even minor burns.  (Exhibit 7, pgs. 5-6.)  On June 22, 2011,**

**Plaintiff requested, among other things, that Headlee provide him with pain medication**

---

[6] "Headlee Dep." refers to the transcript of the June 9, 2015 deposition of Defendant Stacey Headlee, located at Docket No. 169-4.

and allow him to see a doctor. (Cooper Dep. 59:14-60:5; Exhibit 1[7] ¶ 2.) Headlee refused

both of these requests without explanation. (Cooper Dep. 59:21-60:5.)

STATEMENT OF FACT NO. 19:

        Ms. Headlee saw plaintiff on two occasions, June 21, 2011 and July 20, 2011. Ex. E, pp. 95-97, 104-08, Ex. A, p. 129, Ex. G, pp. 5, 6

**RESPONSE NO. 19:** **Disputed. Plaintiff objects to Paragraph 19 as not supported by the**

**cited record.** *See* **Fed. R. Civ. P. 56(c); Local Rule 56.1(a). Headlee saw Plaintiff on June**

**22, 2011, not June 21, 2011. (Exhibit 1 ¶ 2.) At that time, Plaintiff requested, among other**

**things, that Headlee provide him with pain medication and allow him to see a doctor.**

**(Cooper Dep. 59:14-60:5; Exhibit 1 ¶ 2.) Headlee refused both of these requests without**

**explanation. (Cooper Dep. 59:21-60:5.) In the portions of Headlee's testimony cited in**

**Paragraph 19, Headlee testified that she did "not remember the exact date" that she spoke**

**with Mr. Cooper, but that according to her status note, "it looks like" it was on June 21,**

**2011. (Headlee Dep. 96:10-22; 104:3-13.) Headlee also testified that she wrote a progress**

**note that she dated July 20, 2011, but the written record did not refresh her recollection of**

**the date of her second interaction with Plaintiff, because "you know, my heritage, we don't**

**really – dates, times, it's not – it's irrelevant to us." (Headlee Dep. 107:11-108:2.) Headlee**

**acknowledged that she had reason to doubt the accuracy of the date that she wrote on the**

**progress note. (Headlee Dep. 108:9-18 ("Q. And is there anything on this document that**

**indicates the date on which you saw Mr. Cooper? A. It says I saw him on the 20th of July.**

**Q. Do you have any reason to doubt that that was the date that you saw him? A. Well,**

---

[7] Exhibit 1 is a declaration executed by Plaintiff Darnell Cooper on October 30, 2015. Before signing the declaration, Plaintiff made minor corrections by striking through certain words and replacing them with words that he highlighted in yellow. Upon learning of these corrections, Plaintiff's counsel incorporated them into, and mailed to Plaintiff, a revised declaration. Plaintiff signed the revised declaration and placed it in IDOC mail on November 3, 2015 but due to delays affecting outbound mail at Stateville, Plaintiff's counsel has not yet received the clean declaration.

knowing me and time, yeah.  Q. So it's possible that you had seen him on a different date?

A.  It's possible.").)  Headlee testified that neither her progress notes nor her recollection

were reliable indicators of time.  (Headlee Dep. 8:10-12 ("Q. And for how long did you

meet with them?  A.  Time is not relevant in my background so I have no idea."); 10:4-8

("Q. And when did you start working at Sam's Club?  A. Again, time and dates are not

relevant so I have no idea."); 107:11-108:2; 108:9-18; 148:21-23 ("Q. When was that?  A.

Again, I'm sorry; time is not relevant to me.").)

STATEMENT OF FACT NO. 20:

   On December 27, 2012, Plaintiff filed a civil rights lawsuit naming various IDOC and Wexford employees alleging deprivation of his constitutional rights pursuant to 42 U.S.C. §1983. Docket #7. On May 29, 2014, Plaintiff filed an amended complaint naming Karyn Morgan, Angelique Matuzas, Kent Ocupe and Stacey Headlee, hereinafter referred to as "Wexford defendants" alleging deprivation of his constitutional rights pursuant to 42 U.S.C. §1983. Docket #69.

**RESPONSE NO. 20:**  **Undisputed.**

STATEMENT OF FACT NO. 21:

   On April 29, 2014, Plaintiff was able to reach a settlement agreement with the IDOC defendants only and the case was dismissed as to those defendants. The case remained as to the Wexford defendants. Docket #67, Ex. A, p. 24.

**RESPONSE NO. 21:**  **Undisputed.**

STATEMENT OF FACT NO. 22:

   Plaintiff alleges that on June 16, 2011 and June 30, 2011, he suffered objectively serious injuries in the form of burns to his right shoulder, upper middle back and head caused by excessively hot shower water in the F-House showers. Docket 69, para 34-35. Plaintiff alleges that despite specific knowledge of the Plaintiff's injuries the Wexford defendants denied him access to adequate medical care by refusing Plaintiff's request to see a doctor, refusing Plaintiff's request for burn cream, refusing Plaintiff's requests for pain medication, and/or ignoring or denying plaintiff's formal grievances resulting in damages in the form of severe pain, suffering, and permanent scarring and discoloration of skin. Docket 69, para 37, 39

**RESPONSE NO. 22:** **Plaintiff objects to the term "alleges" as argument. The remainder of Paragraph 22 is undisputed, with the clarification that Plaintiff made multiple requests for defendants to let him see a doctor. (Exhibit 1 ¶¶ 1-2; Cooper Dep. 51:1-10; 56:6-22; 59:14-60:5; 68:5-11; 70:7-21.)**

STATEMENT OF FACT NO. 23:

Mr. Cooper was aware of several avenues in order to see a medical technician, nurse, nurse practitioner or doctor, including filling out a sick call request form. Ex. B, pp. 89-90. Ex. A, pp. 12, 15,19

**RESPONSE NO. 23:** **Undisputed.**

STATEMENT OF FACT NO. 24:

After a sick call request is made at Stateville, the medical technician (CMT), an Illinois Department of Corrections employee, would be the first line of triage for a sick inmate and would see the inmate first at their cells and determine whether they could treat the inmate's condition or whether the inmate needed to be seen by a nurse, physician assistant or doctor. Ex. D, pp. 14, 32, Ex. B, pp. 90-91, Ex. C, p. 59, Ex. F, Deposition transcript of Arthur Funk, MD, p. 211.

**RESPONSE NO. 24:** **Disputed. Any patient with a burn must be referred to a physician, physician's assistant, or nurse practitioner. (Exhibit 7, pg. 5 §C-D.) Wexford nurses who encounter inmates who complain of burns are supposed to perform an assessment of that patient. (Funk Dep. [8] 169:8-21; Exhibit 7, pg. 5.) Wexford nurses are required to apply silver sulfadine to minor burns and must provide pain medication to patients with any minor or superficial burn. (Exhibit 7, pg. 6 §E(1).) Nurses are supposed to contact a physician whenever a patient presents with a burn. (Matuzas Dep. 37:3-10; 38:2-8; 85:10-22.)**

---

[8] "Funk Dep." refers to the transcript of the June 4, 2015 30(b)(6) deposition of Wexford Health Sources through its designated representative Arthur Funk, M.D., located at Docket No. 169-5.

STATEMENT OF FACT NO. 25:

Nurses at Stateville have no duty to assess or provide treatment to inmates in their cells at the time they are passing medication as they have to provide medication to 100-150 inmates, thus carrying hundreds of pills. Ex. B, pp. 26, 34-35, 84-85, 87-88, Ex.D, pp. 35-36, Ex. E, p. 86.

**RESPONSE NO. 25: Disputed. A nurse's job duties while passing medication include conducting assessments of patients with medical conditions and obtaining appropriate treatment, including by alerting a correctional officer or placing an inmate on sick call to see a doctor. (Headlee Dep. 34:14-35:15; Ocupe Dep. 37:6-38:4; 59:18-60:2; Funk Dep. 169:8-21.) It would be "totally inappropriate" for a Wexford nurse distributing medication to ignore an inmate's request to be placed on sick call or see a doctor for pain medication as a result of a burn. (Funk Dep. 170:2-12; 197:13-198:3.)**

STATEMENT OF FACT NO. 26:

If a nurse was passing medications, they can order that the inmate be sent to the healthcare unit or request that a medical technician see the patient. Ex. D, pp. 18, 38. Ex. F, p. 210.

**RESPONSE NO. 26: Undisputed.**

STATEMENT OF FACT NO. 27:

If a patient is to receive treatment like dressing changes the inmate will be brought down to the healthcare unit and treated by the nurses. It would never be done in the cells. Ex. E, pp. 39-40, 43-44

**RESPONSE NO. 27: Disputed. Plaintiff objects to Paragraph 27 as vague, ambiguous, conclusory, and unsupported by the cited record. _See_ Fed. R. Civ. P. 56(c); Local Rule 56.1(a). In the testimony cited in Paragraph 27, Headlee testified about sick call and separately testified that she personally did not administer creams or ointments to a patient "in their housing situation;" she offers no testimony regarding whether or not she or any**

other nurse could, or was supposed to, provide any treatment in any patient's cell.

**(Headlee Dep. 39:1-40:24; 43:1-44:24.)**

STATEMENT OF FACT NO. 28:

A nurse can make the independent determination as to whether an inmate's condition warrants seeing a physician or physician assistant. Ex. E, p. 76, Ex. F, p. 221.

**RESPONSE NO. 28:  Disputed.  Plaintiff objects to Paragraph 28 as unsupported by the cited record.  *See* Fed. R. Civ. P. 56(c); Local Rule 56.1(a).  Wexford's treatment protocol for burns requires nurses to refer any inmate with any burn to a physician, physician's assistant, or nurse practitioner.  (Exhibit 7, pg. 5 §C-D.)  None of the testimony cited in Paragraph 28 relates to physician assistants.**

STATEMENT OF FACT NO. 29:

Inmates have access to pain medication from the prison commissary. Ex. F, pp. 123-24, 223 Ex. C, p. 82, Ex. A, p. 48.

**RESPONSE NO. 29:  Disputed.  Plaintiff objects to Paragraph 29 as vague, ambiguous, and unsupported by the cited testimony.  *See* Fed. R. Civ. P. 56(c); Local Rule 56.1(a).  The cited testimony does not state whether pain medication was available at the time of Plaintiff's injuries.  During 2011, Plaintiff did not have access to Ibuprofen or Tylenol through the commissary.  (Cooper Dep. 48:16-18.)  None of the Defendants ever said to Plaintiff that he could purchase pain medication in the commissary to treat his burns. (Cooper Dep. 138:5-9.)**

STATEMENT OF FACT NO. 30:

If nurse provides treatment or medication to an inmate, the nurse would document it contemporaneously. Ex. D, p. 91, Ex. E, p. 166.

**RESPONSE NO. 30:** Disputed. Plaintiff objects to Paragraph 30 as unsupported by the cited record, speculation, conclusory, argument, and improper lay opinion. *See* Fed. R. Civ. P. 56(c); Local Rule 56.1(a). On July 1st or 2nd of 2011, Ocupe gave Plaintiff dibucaine ointment, but he did not document that fact. (Cooper Dep. 70:7-21.) In the portion of Ocupe's testimony cited in Paragraph 30, Ocupe testified that when he was trained as a nurse, he was trained that if he provided medication to an inmate, he should document it; he did not testify that any other nurse received this training, or that he or any other nurse actually adhered to it. (Ocupe Dep. 90:17-91:6.) In the portion of Headlee's testimony cited in Paragraph 30, Headlee testified that her practice would be to document an encounter at or about the time that she saw the inmate; she did not testify that she always did so, nor did she offer any testimony about any other nurse's practices. (Headlee Dep. 166:18-167:4.) The cited testimony does not state whether any other nurse would document contemporaneously each time that they provide treatment or medication to an inmate.

STATEMENT OF FACT NO. 31:

Had plaintiff requested pain medication at any time, it would have been documented. Ex. C, p. 82.

**RESPONSE NO. 31:** Disputed. Plaintiff objects to Paragraph 31 as vague, ambiguous, speculation, conclusory, argument, improper lay opinion, and unsupported by the cited record. *See* Fed. R. Civ. P. 56(c); Local Rule 56.1(a). The portion of Matuzas's testimony cited as the sole support for Paragraph 31 makes no reference to whether Plaintiff's requests for pain medication to other nurses would have been documented. (Matuzas Dep. 81:21-82:4.) Notably, Matuzas has no recollection of Plaintiff, whether she ever spoke to Plaintiff, or whether Plaintiff ever said anything to her about the pain he was experiencing

as a result of burns. (Matuzas Dep. 60:2-63:20; Exhibit 3 ¶¶ 9-10.) **Plaintiff requested pain medication from Morgan on June 18, 2011 and July 1, 2011, Matuzas on June 20, 2011 and June 21, 2011, Headlee on June 22, 2011, and Ocupe on July 1st or 2nd of 2011. (Exhibit 1 ¶¶ 2-3; Cooper Dep. 51:1-10; 56:6-22; 68:5-11; 70:7-21.)**

STATEMENT OF FACT NO. 32:

       First degree burns require no treatment. Ex. D, p. 86. Ex. F, pp. 234-235.

**RESPONSE NO. 32:** **Disputed. Plaintiff objects to Paragraph 32 as conclusory, argument, improper lay opinion testimony, and as directly contradicted by the cited record.** *See* **Fed. R. Civ. P. 56(c); Local Rule 56.1(a). Defendants did not designate any expert witness, and the deadline for doing so has passed. The proper treatment for a first-degree burn is a topic requiring scientific, technical, or other specialized knowledge. The testimony cited in Paragraph 32 on this issue is from lay witnesses, and is therefore inadmissible.** *See* **Fed. R. Evid. 701. Moreover, Dr. Funk testified in the portion of his testimony cited in Paragraph 32 that the proper treatment for first degree burns includes "avoidance of irritation of the skin . . . [a]nalgesics if the patient requests it," and sometimes dressing changes. (Funk Dep. 234:6-17.) Further, the nursing treatment protocols adopted by Wexford and in effect during 2011 specify that even superficial burns are painful and that the proper treatment of even minor and superficial burns includes pain medication and referral to a doctor, physician's assistant, or nurse practitioner. (Exhibit 7, pgs. 5-6.)**

STATEMENT OF FACT NO. 33:

       First degree burns would not leave a scar. Ex. F, p. 201.

**RESPONSE NO. 33:** **Disputed. Plaintiff objects to Paragraph 33 as conclusory, argument, and improper lay opinion testimony.** *See* **Fed. R. Civ. P. 56(c); Local Rule 56.1(a).**

**Defendants did not designate any expert witness, and the deadline for doing so has passed.**

**Whether a first-degree burn can leave a scar is a topic requiring scientific, technical, or**

**other specialized knowledge. Because Dr. Funk testified only as a lay witness, his testimony**

**on this issue is inadmissible.** *See* **Fed. R. Evid. 701.**

STATEMENT OF FACT NO. 34:

Nurses at Stateville can treat inmates' complaints of burns and pain per protocol and/or doctor's orders including application of saturated gauze, dressing changes, and application of certain creams. Ex. B, pp. 21, 26, 29. Ex. D, p. 54, Ex. E, pp. 43-44, 69, 156.

**RESPONSE NO. 34: Undisputed, but add that the nursing treatment protocols adopted by**

**Wexford and in effect during 2011 specify that even minor or superficial burns require**

**pain medication and that all burns require referral to a doctor, physician's assistant, or**

**nurse practitioner. (Exhibit 7, pgs. 5-6.)**

STATEMENT OF FACT NO. 35:

A&D ointment does not treat burns, protect burnt skin or prevent scarring from burns. Ex. F, p. 201.

**RESPONSE NO. 35: Disputed. Plaintiff objects to Paragraph 35 as conclusory, argument,**

**and improper lay opinion testimony.** *See* **Fed. R. Civ. P. 56(c); Local Rule 56.1(a).**

**Defendants did not designate any expert witness, and the deadline for doing so has passed.**

**Whether A&D ointment treats burns, protects burnt skin, or prevents scarring from burns**

**is a topic requiring scientific, technical, or other specialized knowledge. Because Dr. Funk**

**testified only as a lay witness, his testimony on this issue is inadmissible.** *See* **Fed. R. Evid.**

**701.**

STATEMENT OF FACT NO. 36:

The risk of infection in a first degree burn is very slight. Ex. F, p. 235.

**RESPONSE NO. 36:** Disputed. Plaintiff objects to Paragraph 36 as conclusory, argument, and improper lay opinion testimony. *See* **Fed. R. Civ. P. 56(c); Local Rule 56.1(a). Defendants did not designate any expert witness, and the deadline for doing so has passed. The risk of infection resulting from a first-degree burn is a topic requiring scientific, technical, or other specialized knowledge. Because Dr. Funk testified only as a lay witness, his testimony on this issue is inadmissible.** *See* **Fed. R. Evid. 701.**

STATEMENT OF FACT NO. 37:

> A first degree burn would cause discomfort for the first 24 hours, the next 24-48 hours would have discomfort limited to skin contact in that area and after three days they have no discomfort at all. Ex. F, p. 235.

**RESPONSE NO. 37:** Disputed. Plaintiff objects to Paragraph 37 as conclusory, argument, and improper lay opinion testimony. *See* **Fed. R. Civ. P. 56(c); Local Rule 56.1(a). Defendants did not designate any expert witness, and the deadline for doing so has passed. The pain or discomfort resulting from a first-degree burn is a topic requiring scientific, technical, or other specialized knowledge. Because Dr. Funk testified only as a lay witness, his testimony on this issue is inadmissible.** *See* **Fed. R. Evid. 701. Plaintiff was in pain for multiple days after suffering both of his burns. (Cooper Dep. 47:20-22; 50:13-51:10; 52:9-11; 56:6-22; 68:5-11; 69:2-16; 70:7-21; Exhibit 1 ¶ 2.) Moreover, the nursing treatment protocols adopted by Wexford and in effect during 2011 specify that even superficial burns are painful and that the proper treatment even minor and superficial burns includes pain medication for at least three days and that all burns require referral to a doctor, physician's assistant, or nurse practitioner. (Exhibit 7, pgs. 5-6.)**

STATEMENT OF FACT NO. 38:

      On June 16, 2011, Mr. Cooper jumped out of the shower after the allegedly hot water hit his back, right side of his body and part of his neck. Ex. A, pp. 29, 34-35.

**RESPONSE NO. 38:  Undisputed.**

STATEMENT OF FACT NO. 39:

      Mr. Cooper did not tell any guards or any medical personnel of the alleged burn from the shower on June 16, 2011. Ex. A, pp. 37, 39.

**RESPONSE NO. 39:  Plaintiff objects to the term "alleged" as argument.  The remainder of Paragraph 39 is undisputed, but add that the shower during which Plaintiff suffered the burn took place during the evening.  (Cooper Dep. 137:16-18.)  Plaintiff did not see any medical personnel on June 16, 2011 after he was burned by the shower water.  (Cooper Dep. 137:19-22.)  Defendants offer no evidence indicating that Plaintiff encountered a guard on June 16, 2011 after he was burned by the shower water.**

STATEMENT OF FACT NO. 40:

      The first time that plaintiff noticed that he had any burn was on June 17, 2011. Docket 69, Para 16, Ex. A, pp. 39.

**RESPONSE NO. 40:  Disputed.  Undisputed that plaintiff did not see the actual burns on his skin until he woke up on June 17, 2011, the morning after the evening shower during which he was burned.  However, Plaintiff suffered pain from his burns immediately after they occurred on June 16, 2011.  (Cooper Dep. 138:10-18.)**

STATEMENT OF FACT NO. 41:

      Plaintiff did not tell any medical personnel of his burn on June 17, 2011. Ex. A, pp. 42-43

**RESPONSE NO. 41:  Undisputed, but add that Defendants offer no evidence that Plaintiff encountered any medical personnel on June 17, 2011.**

STATEMENT OF FACT NO. 42:

On June 18, 2011, when plaintiff alleges he told Karen Morgan of his burns, Nurse Morgan was distributing medication in F-house. Ex. A, pp. 45, 127

**RESPONSE NO. 42: Plaintiff objects to the characterization "alleges" as argument. The remainder of Paragraph 42 is undisputed.**

STATEMENT OF FACT NO. 43:

On June 18, 2011, plaintiff was taken to urgent care and a CMT examined Mr. Cooper's back and neck and noted no blisters present with some peeling. Docket 69, para 19, Ex. A, p. 47; Ex. G, p. 6. Ex. F, pp. 136-38, 211

**RESPONSE NO. 43: Plaintiff objects to Paragraph 43 as vague, ambiguous, and unsupported by the cited record. *See* Fed. R. Civ. P. 56(c); Local Rule 56.1(a). Undisputed that on June 18, 2011, Plaintiff was taken to urgent care and that a CMT examined him. To the extent that the term "noted" in Paragraph 43 means "documented in the progress note," the remainder of Paragraph 43 is undisputed. To the extent that the term "noted" means "observed," the remainder of Paragraph 43 is unsupported by the cited evidence, none of which includes testimony offered by individuals with personal knowledge of the nurse or CMT's observations.**

STATEMENT OF FACT NO. 44:

On June 18, 2011, the CMT cleansed the wounds, applied Sulfadyne and bandages to the right shoulder and back of neck, and noted a plan for daily dressing changes and to monitor for infection. Docket 69, para 19, Ex. A, p. 47; Ex. G, p. 6. Ex. F, pp. 136, 138, 209, 211, 213.

**RESPONSE NO. 44: Undisputed.**

STATEMENT OF FACT NO. 45:

On June 19, 2011, plaintiff did not tell any of the Wexford defendants about his alleged burns. Ex. A, p. 50.

**RESPONSE NO. 45:  Plaintiff objects to the term "alleged" as argument.  The remainder**

**of Paragraph 45 is undisputed, but add that Defendants offer no evidence that Plaintiff**

**encountered any of the Defendants on June 19, 2011.**

STATEMENT OF FACT NO. 46:

On June 21, 2011 at approximately 10:15 a.m., plaintiff was taken to the health care unit where defendant, Angela Matuzas changed plaintiff's bandages, cleansed the area with saline solution and applied Silvadene cream. Ex. A, pp. 49-50, 56-57. Ex. C, p. 66-67 Docket 69, para 23, Ex. G, p. 8. Ex. F, p. 213

**RESPONSE NO. 46:  Undisputed, but add that during this encounter, Plaintiff told**

**Matuzas he was in pain, asked her for pain medication, and requested that she allow him to**

**see a doctor for his burns.  (Cooper Dep. 56:6-22.)  Matuzas refused Cooper's requests and**

**told a security officer that Cooper was "making trouble." (Cooper Dep. 56:6-57:14.)**

STATEMENT OF FACT NO. 47:

On June 21, 2011, Nurse Matuzas noted that Mr. Cooper had a minor burn that was healing well on the back of his neck and right shoulder. Ex. C, p. 64, Ex. G, p. 8

**RESPONSE NO. 47:  Plaintiff objects to Paragraph 47 as vague, ambiguous, and**

**unsupported by the cited record.  *See* Fed. R. Civ. P. 56(c); Local Rule 56.1(a).  To the**

**extent that the term "noted" in Paragraph 47 means "documented in the progress note,"**

**Paragraph 47 is undisputed.  To the extent that the term "noted" means "observed,"**

**Paragraph 47 is disputed and unsupported by the cited evidence; Matuzas does not**

**remember any of her interactions with Plaintiff.  (Matuzas Dep. 60:2-63:20.)**

STATEMENT OF FACT NO. 48:

On June 21, 2011, Nurse Matuzas noted that Mr. Cooper reported that the burn was feeling better and although he complained of minor discomfort, Mr. Cooper showed no signs of distress. Ex. C, p. 68. Ex. G, p. 8, Ex. A, pp. 57-58.

**RESPONSE NO. 48:** **Plaintiff objects to Paragraph 48 as vague, ambiguous, argument, and unsupported by the cited record.** *See* *Fed. R. Civ. P. 56(c); Local Rule 56.1(a).* **Undisputed that on June 21, 2011, Matuzas documented in a progress note that Plaintiff said "it's feeling a bit better," that he complained of discomfort, and that despite this complaint Matuzas documented that Plaintiff showed no sign of distress. Plaintiff told Matuzas that the burn felt a bit better only after she applied burn cream to the wound; he meant that the burn felt cooler after she applied the burn cream, but the pain remained. (Cooper 139:2-14.) To the extent that "noted" means "observed," the remainder of Paragraph 48 is disputed and unsupported by the cited evidence; Matuzas does not remember any of her interactions with Plaintiff. (Matuzas Dep. 60:2-63:20.)**

STATEMENT OF FACT NO. 49:

On June 21, 2011, at 1240 pm, plaintiff was again taken down to the health care unit and saw defendant, Nurse Headlee. Ex. A, pp. 58-59, Ex. G, p. 5, Docket 69, para 25. Ex. E, p. 104

**RESPONSE NO. 49:** **Disputed. Plaintiff objects to Paragraph 49 as unsupported by the cited record.** *See* *Fed. R. Civ. P. 56(c); Local Rule 56.1(a).* **Plaintiff was taken to the health care unit and saw Headlee on June 22, 2011, not June 21, 2011. (Cooper Dep. 58:17-59:17.) Headlee testified that neither her progress notes nor her recollection were reliable indicators of time. (Headlee Dep. 8:10-12 ("Q. And for how long did you meet with them? A. Time is not relevant in my background so I have no idea."); 10:4-8 ("Q. And when did you start working at Sam's Club? A. Again, time and dates are not relevant so I have no idea."); 107:11-108:2; 108:9-18; 148:21-23 ("Q. When was that? A. Again, I'm sorry; time is not relevant to me."); *see also* Plaintiff's Response to ¶ 19.)**

STATEMENT OF FACT NO. 50:

On June 21, 2011, Nurse Headlee changed Mr. Cooper's dressing and noted that the wound was healing and the skin was intact with no redness or blisters observed. Ex. A, p. 59, Ex. G, p. 5, Ex. E, pp. 97-99, 154-55

**RESPONSE NO. 50:  Disputed.  Plaintiff objects to Paragraph 50 as unsupported by the cited record.  *See* Fed. R. Civ. P. 56(c); Local Rule 56.1(a).  Plaintiff was taken to the health care unit and saw Headlee on June 22, 2011, not June 21, 2011.  (Cooper Dep. 58:17-59:17.) Headlee testified that neither her progress notes nor her recollection were reliable indicators of time.  (Headlee Dep. 8:10-12; 10:4-8; 107:11-108:2; 108:9-18; 148:21-23; *see also* Plaintiff's Response to ¶ 19.)  Headlee did not change Plaintiff's dressings during that visit and refused to apply any gauze or burn cream to his burns.  (Cooper Dep. 59:21-60:2.)**

STATEMENT OF FACT NO. 51:

On June 21, 2011, Nurse Headlee did not note any complaints of pain, requests for medication, or requests to see a physician by Mr. Cooper. Ex. G, p. 5,

**RESPONSE NO. 51:  Disputed.  Headlee did not see Plaintiff on June 21, 2011; she saw him on June 22, 2011.  (Cooper Dep. 58:17-59:17.)  During Plaintiff's June 22, 2011 encounter with Headlee, he complained to her about the pain he was experiencing from his burns, requested pain medication, and asked for her to arrange for him to see a doctor. (Cooper Dep. 59:14-60:5; Exhibit 1 ¶ 2.)  She refused these requests without explanation. (Cooper Dep. 59:21-60:5; Exhibit 1 ¶ 2.)  Undisputed that when Headlee saw Plaintiff on June 22, 2011, she did not record in the progress note that he complained of pain, requested medication, or requested to see a physician.**

STATEMENT OF FACT NO. 52:

Since Nurse Headlee did not note such complaints or requests, Mr. Cooper did not make such complaints or requests, as it would have been Nurse Headlee's custom and practice to document such information. Ex. G, p. 5, Ex. E, p. 99, 154, 156-57.

**RESPONSE NO. 52:** Disputed.  Plaintiff objects to Paragraph 52 as vague and ambiguous with respect to the phrase "such complaints" and as conclusory, argument, and unsupported by the cited record.  *See* Fed. R. Civ. P. 56(c); Local Rule 56.1(a).  When Plaintiff saw Headlee on June 22, 2011, he requested that she clean the area of his burns, apply burn cream and gauze, and provide him with pain medication.  (Exhibit 1 ¶ 2.)  When Headlee refused, he requested that she allow him to see a doctor.  (Exhibit 1 ¶ 2.)  Headlee denied that request as well.  (Exhibit 1 ¶ 2.)

STATEMENT OF FACT NO. 53:

On June 21, 2011, Nurse Headlee would have educated Mr. Cooper on keeping the burn moist with water from faucet in his cell. Ex. E, p. 103.

**RESPONSE NO. 53:**  Disputed.  Plaintiff objects to Paragraph 53 as argument, conclusory, speculation, and not supported by admissible evidence.  *See* Fed. R. Civ. P. 56(c); Local Rule 56.1(a).  Headlee did not see Plaintiff on June 21, 2011; she saw him on June 22, 2011.  (Cooper Dep. 58:17-59:17.)  What Headlee "would have" done is speculation.  In the cited testimony, Headlee testified that she "usually educate[s] everybody" so she "most likely" did so with respect to Plaintiff.  (Headlee Dep. 103:5-8.)

STATEMENT OF FACT NO. 54:

By June 21, 2011, Mr. Cooper did not need to be seen by a physician because his burn was healing. Ex. E, p. 158.

**RESPONSE NO. 54:**  Disputed.  Plaintiff objects to Paragraph 54 as conclusory, argument, improper lay opinion testimony, and not supported by the cited record.  *See* Fed. R. Civ. P.

56(c); Local Rule 56.1(a).  **Defendants did not designate any expert witness, and the deadline for doing so has passed.  Whether Plaintiff needed to see a physician, and whether his burn was healing as of June 21, 2011, are topics requiring scientific, technical, or other specialized knowledge.  Because Dr. Funk testified only as a lay witness, his testimony on this issue is inadmissible.**  *See* **Fed. R. Evid. 701.  Notably, Headlee did not see Plaintiff on June 21, 2011; she saw him on June 22, 2011.  (Cooper Dep. 58:17-59:17.)**

STATEMENT OF FACT NO. 55:

By June 21, 2011, Mr. Cooper did not require any pain medication for his burn as the healing stage does not cause any pain. Ex. E, p. 159.

**RESPONSE NO. 55:  Disputed.  Plaintiff objects to Paragraph 55 as conclusory, argument, improper lay opinion testimony, and not supported by the cited record.**  *See* **Fed. R. Civ. P. 56(c); Local Rule 56.1(a).  Defendants did not designate any expert witness, and the deadline for doing so has passed.  Whether Plaintiff required pain medication, and whether his burn was healing, as of June 21, 2011, are topics requiring scientific, technical, or other specialized knowledge.  Because Dr. Funk testified only as a lay witness, his testimony on this issue is inadmissible.**  *See* **Fed. R. Evid. 701.  Notably, Headlee did not see Plaintiff on June 21, 2011; she saw him on June 22, 2011.  (Cooper Dep. 58:17-59:17.)  Cooper suffered pain from the burns on both June 21, 2011 and June 22, 2011.  (Cooper Dep. 56:6-22; Exhibit 1 ¶ 2.)**

STATEMENT OF FACT NO. 56:

From June 22, 2011 to June 30, 2011, Mr. Cooper did not request any medical care for his neck and back. Ex. A, p. 61.

**RESPONSE NO. 56:  Disputed.  Plaintiff objects to Paragraph 56 as unsupported by the cited record.**  *See* **Fed. R. Civ. P. 56(c); Local Rule 56.1(a).  When Plaintiff saw Headlee on**

June 22, 2011, he requested that she clean the area of his burns, apply burn cream and gauze, and provide him with pain medication.  (Exhibit 1 ¶ 2.)  When Headlee refused, he requested that she allow him to see a doctor.  (Exhibit 1 ¶ 2.)  Headlee denied that request as well.  (Exhibit 1 ¶ 2.)  In the cited portion of Plaintiff's testimony, Plaintiff testified that he did not believe that he requested medical attention during the time period starting after that visit and ending on June 30, 2011.  (Cooper Dep. 60:20-61:3.)

STATEMENT OF FACT NO. 57:

On June 30, 2011, the date of the second alleged shower burn, plaintiff did not believe that he had a burn on his head. Ex. A, pp. 62, 65.

**RESPONSE NO. 57:  Disputed.  Plaintiff objects to Paragraph 57 as directly contradicted by the cited record, and to the term "alleged" as argument.  *See* Fed. R. Civ. P. 56(c); Local Rule 56.1(a).  In the portion of Plaintiff's testimony cited in Paragraph 57, Plaintiff testified that after being burned in the shower that day, he "felt the burn . . . but I didn't notice the severity of the burn."  (Cooper Dep. 65:13-21.)**

STATEMENT OF FACT NO. 58:

The first time plaintiff told someone about the burn on his head was when he noticed the skin on his head peeling on July 1, 2011. Ex. A, pp. 65-66.

**RESPONSE NO. 58:  Undisputed.**

STATEMENT OF FACT NO. 59:

On July 1, 2011, when plaintiff alleges that he told Nurse Morgan of his alleged head burn, Nurse Morgan was passing medications in the cell house. Para 27, Ex. A, pp. 66, 68.

**RESPONSE NO. 59:  Plaintiff objects to the terms "alleges" and "alleged" as argument. The remainder of Paragraph 59 is undisputed.**

STATEMENT OF FACT NO. 60:

Plaintiff admits that he received care for his burn on June 30, 2011, July 1 and July 2 by Nurse Ocupe. Ex. A, pp. 70-71, 86.

**RESPONSE NO. 60: Disputed. Plaintiff objects to Paragraph 60 as mischaracterizing the cited record. *See* Fed. R. Civ. P. 56(c); Local Rule 56.1(a). In the portion of Plaintiff's testimony cited in Paragraph 60, Plaintiff testified about only one interaction with Ocupe, which took place on either July 1st or July 2nd of 2011, who provided him with ointment. (Cooper Dep. 86:19-22.) Plaintiff requested during that visit that Ocupe provide him with some pain medication or allow him to see a doctor. (Cooper Dep. 70:10-21.) Ocupe walked away without responding to Plaintiff's requests. (Cooper Dep. 70:10-21.)**

STATEMENT OF FACT NO. 61:

On July 2, 2011, when plaintiff alleges he told Nurse Ocupe of the burns on his head, Nurse Ocupe was passing medications in the cell house. Ex. A, p. 128

**RESPONSE NO. 61: Disputed. Plaintiff objects to Paragraph 61 as vague, ambiguous, and mischaracterizing the cited record. *See* Fed. R. Civ. P. 56(c); Local Rule 56.1(a). Plaintiff objects to the term "alleges" as argument. The cited testimony indicates that Plaintiff saw Ocupe on either July 1st or July 2nd, 2011. (Cooper Dep. 128:7-18.) The cited testimony does not reference whether or not Ocupe was passing medication when Plaintiff saw him on those dates. (Cooper Dep. 128:1-24.)**

STATEMENT OF FACT NO. 62:

Plaintiff did not show Nurse Ocupe the burns on his shoulder or tell him about them on July 2, 2011. Ex. A, p. 71.

**RESPONSE NO. 62: Undisputed, but add that Plaintiff showed the burns on his head to Ocupe when he saw him on July 1 or July 2, 2011. (Cooper Dep. 70:7-21.)**

STATEMENT OF FACT NO. 63:

Plaintiff first filled out a medical request form to the officers on July 20, 2011 regarding burns he received on June 16, 2011. Ex. A, p. 73. This first request does not mention the burn from June 30, 2011. Id. Plaintiff did not know what the result of this request was. Ex. A, p. 75.

**RESPONSE NO. 63:  Undisputed that Plaintiff filed an offender request form on July 20, 2011 requesting to see a doctor and receive pain medication for his burns, and that Plaintiff does not know the results of that specific request.  Disputed that this was the first medical request form Plaintiff submitted regarding his burns.  Plaintiff submitted a medical treatment grievance on June 20, 2011 in which he complained about the lack of medical treatment that he had received for the burns that he suffered on June 16, 2011.  (Exhibit 2.) On July 5, 2011, Plaintiff filed a medical treatment grievance in which he complained about the lack of medical treatment that he had received for the burns that he suffered on June 16, 2011 and June 30, 2011.  (Exhibit 8.)  In that grievance, Plaintiff complained that despite several encounters with medical personnel, he had still not received any pain medication for his burns. (Exhibit 8.)  Plaintiff also orally requested medical treatment from the defendants on several occasions (Cooper Dep. 47:20-22; 50:13-51:10; 52:9-11; 53:15-24; 56:6-22; 68:5-11; 69:2-16; 70:7-21; Exhibit 1 ¶ 2.)**

STATEMENT OF FACT NO. 64:

On July 20, 2011, plaintiff was sent to the healthcare unit and saw Nurse Headlee. Ex. A, pp. 75, 79-80, Ex. G, p. 6, Ex. F, p. 214

**RESPONSE NO. 64:  Disputed.  Plaintiff objects to Paragraph 64 as directly contradicted by the cited evidence.  *See* Fed. R. Civ. P. 56(c); Local Rule 56.1(a).  In the cited testimony, Plaintiff stated that he had no reason to doubt "if there is documentation" that he visited "a nurse" on July 21, 2011.  (Cooper Dep. 75:15-18.)  Plaintiff saw a nurse on July 20, 2011,**

**but the nurse was not Headlee. (Cooper Dep. 79:24-80:3; 80:19-23 ("Q. Is it possible that**

**that was Ms. Headlee? A. On July 20th? Q. Correct. A. No.")). Headlee testified that**

**neither her progress notes nor her recollection were reliable indicators of time. (Headlee**

**Dep. 8:10-12 ("Q. And for how long did you meet with them? A. Time is not relevant in**

**my background so I have no idea."); 10:4-8 ("Q. And when did you start working at Sam's**

**Club? A. Again, time and dates are not relevant so I have no idea."); 107:11-108:2; 108:9-**

**18; 148:21-23 ("Q. When was that? A. Again, I'm sorry; time is not relevant to me."); *see***

***also* Plaintiff's Response to ¶ 19.)**

STATEMENT OF FACT NO. 65:

On July 20, 2011, Nurse Headlee noted no complaints by Mr. Cooper, examined the skin on the back of his head, neck and back and provided no treatment for the burn because it was healed. Ex. E, pp. 162-65, Ex. G, p. 6, Ex. A, pp. 121-122, Ex. F, pp. 214-215.

**RESPONSE NO. 65: Disputed. Plaintiff objects to the phrase "because it was healed" as**

**conclusory, speculation, and argument. *See* Fed. R. Civ. P. 56(c); Local Rule 56.1(a).**

**Plaintiff objects to the remainder of Paragraph 65 as unsupported by the cited record. *Id.***

**Plaintiff's only visit with Headlee regarding his burns took place on June 22, 2011.**

**(Cooper Dep. 59:5-17; 70:7-72:8.) Plaintiff did not see Headlee on July 20, 2011. (Cooper**

**Dep. 79:24-80:3; 80:19-23 ("Q. Is it possible that that was Ms. Headlee? A. On July 20th?**

**Q. Correct. A. No.")). Headlee testified that neither her progress notes nor her**

**recollection were reliable indicators of time. (Headlee Dep. 8:10-12 ("Q. And for how long**

**did you meet with them? A. Time is not relevant in my background so I have no idea.");**

**10:4-8 ("Q. And when did you start working at Sam's Club? A. Again, time and dates are**

**not relevant so I have no idea."); 107:11-108:2; 108:9-18; 148:21-23 ("Q. When was that?**

**A. Again, I'm sorry; time is not relevant to me."); *see also* Plaintiff's Response to ¶ 19.)**

STATEMENT OF FACT NO. 66:

On July 30, 2011 and November 9, 2011, Mr. Cooper was seen in the hypertension clinic with no complaints related to his burns. Ex. G, pp. 12, 20.

**RESPONSE NO. 66:  Disputed.  Plaintiff objects to Paragraph 66 as unsupported by the cited record.  *See* Fed. R. Civ. P. 56(c); Local Rule 56.1(a).  Undisputed that the cited documents indicate that Plaintiff was seen by someone on July 20, 2011 and November 9, 2011.  Neither of the cited records indicate whether or not Plaintiff complained of burns during those encounters.**

STATEMENT OF FACT NO. 67:

On August 1, 2011, and October 17, 2011, Mr. Cooper had teeth extracted by Dr. Mitchell. Ex. G, pp. 46, 138, 141.

**RESPONSE NO. 67:  Undisputed.**

STATEMENT OF FACT NO. 68:

On August 9, 2001, Mr. Cooper refused a blood draw ordered by Dr. Carter because he was fasting for Ramadan. Ex. G, p. 140.

**RESPONSE NO. 68:  Disputed.  Plaintiff objects to the term "August 9, 2001" as unsupported by the cited record.  The cited record reflects that the interaction described in Paragraph 68 took place on August 1, 2011.  The remainder of Paragraph 68 is undisputed.**

STATEMENT OF FACT NO. 69:

In June, July and August, plaintiff saw his psychiatrist, Dr. Kelly and he never complained to him about the pain from his burns. Ex. A, p. 132.

**RESPONSE NO. 69:  Disputed.  Plaintiff attempted to tell Dr. Kelly about the pain he was experiencing from his burns, but Dr. Kelly refused to address Plaintiff's pain because the purpose of the visit was psychological treatment.  (Cooper Dep. 133:8-16.)**

STATEMENT OF FACT NO. 70:

On October 5, 2011, Mr. Cooper sent letter to CMT regarding complaints of numbness on his left side and he was seen at nursing sick call on October 6, 2011. Mr. Cooper did not make any complaints related to his burns. Ex. G, p. 17.

**RESPONSE NO. 70:  Disputed.  Plaintiff objects to Paragraph 70 as unsupported by the cited record.  _See_ Fed. R. Civ. P. 56(c); Local Rule 56.1(a).  The cited evidence does not indicate whether or not Plaintiff made any complaints related to his burns during the October 6, 2011 visit.  (Defendants' Ex. G, pg. 17.)**

STATEMENT OF FACT NO. 71:

On December 20, 2011, plaintiff wrote PA Williams requesting cream that would get the tone back on his back skin. Ex. A, p. 106.

**RESPONSE NO. 71:  Undisputed.**

STATEMENT OF FACT NO. 72:

On January 2, 2012, Karen Morgan, RN noted that Mr. Cooper refused the morning medication pass. Mr. Cooper had no complaints at this time. Ex. G, p. 26.

**RESPONSE NO. 72:  Plaintiff objects to Paragraph 72 as vague and ambiguous with respect to the term "noted," and as unsupported by the cited record.  _See_ Fed. R. Civ. P. 56(c); Local Rule 56.1(a).  To the extent that the term "noted" in Paragraph 72 means "documented in the progress note," the remainder of Paragraph 72 is undisputed.  To the extent that the term "noted" means "observed," the remainder of Paragraph 72 is unsupported by the cited evidence, none of which includes testimony offered by individuals with personal knowledge of the nurse or CMT's observations.**

STATEMENT OF FACT NO. 73:

On January 10, 2012, plaintiff was seen by Dr. Carter for complaints of a non healing burn on left shoulder and numbness on top of left foot, but no complaints of pain related to a burn. Par 32. Ex. A, pp. 107, 125-126, Ex. F, p. 215, Ex. G, p. 26.

**RESPONSE NO. 73:  Disputed.  Plaintiff objects to Paragraph 72 as mischaracterizing the cited record.  *See* Fed. R. Civ. P. 56(c); Local Rule 56.1(a).  Undisputed that on January 10, 2012, Plaintiff was seen by Dr. Carter regarding complaints related to his burns and numbness on his left foot.  The cited record reflects that Dr. Carter documented the presence of a scar above Plaintiff's right scapula.  (Defendants' Ex. G, 26.)  That scar was caused by Plaintiff's burns.  (Cooper Dep. 108:24-109:5.)  Plaintiff also complained to Dr. Carter regarding the burns on his back and his head during the visit.  (Cooper Dep. 107:10-20.)**

STATEMENT OF FACT NO. 74:

> Dr. Carter assessed Mr. Cooper as having a healed superficial burn on his right shoulder. Ex. G, p. 26, Ex. F, p. 217

**RESPONSE NO. 74:  Undisputed.**

STATEMENT OF FACT NO. 75:

> Mr. Cooper's burn as presented to the CMT on June 18, 2011 was a first degree burn. Ex. F, pp. 212, 231.

**RESPONSE NO. 75:  Disputed.  Plaintiff objects to Paragraph 75 as conclusory, argument, speculation, improper lay opinion, and mischaracterizing the cited record.  *See* Fed. R. Civ. P. 56(c); Local Rule 56.1(a).  Defendants did not designate any expert witness, and the deadline for doing so has passed.  The proper diagnosis of Plaintiff's burns is topic requiring scientific, technical, or other specialized knowledge.  Because Dr. Funk testified only as a lay witness, his testimony on this issue is inadmissible.  *See* Fed. R. Evid. 701.  Dr. Funk does not recall whether he ever treated Plaintiff, and he did not speak to any individuals who treated Plaintiff.  (Funk Dep. 9:21-12:2; 23:2-24:12.)  Dr. Funk did not review Plaintiff's medical record prior to his 30(b)(6) deposition.  (Funk Dep. 25:14-17.**

**("Q. You didn't review any medical records in preparation for your 30(b)(6) testimony today, is that correct? A. That is correct."); 24:15-22; 25:7-13; 128:22-129:4.) Dr. Funk testified only as to "what likely would have occurred." (Funk Dep. 231:2-16.) Further, Plaintiff did suffer blusters from his burn. (Cooper Dep. 41:9-14; 120:11-15.)**

STATEMENT OF FACT NO. 76:

Plaintiff currently does not have any pain on his head or back or peeling or blisters on his skin. Ex. A, pp. 118, 125.

**RESPONSE NO. 76: Undisputed that Plaintiff did not have any pain on his head or back or peeling or blisters on his skin as of the date of his deposition in this matter.**

STATEMENT OF FACT NO. 77:

Mr. Cooper did not suffer a permanent scar from the alleged burn he suffered in June 2011. Ex. F, pp. 217-18, Ex. A, pp. 109, 10-11.

**RESPONSE NO. 77: Disputed. Plaintiff objects to the term "alleged" as argument. Plaintiff has a scar from the burns in the area of his right shoulder blade and collarbone. (Cooper Dep. 108:24-109:5 ("Q. Do you have a scar in your – generally in your right shoulder blade up to your collarbone area?. A. Yes. Q. And what is that from? A. The burns.").)**

STATEMENT OF FACT NO. 78:

It would be reasonable that a patient would not seek consultation with a physician for a burn like Mr. Cooper suffered. Ex. F, pp. 234-35.

**RESPONSE NO. 78: Disputed. Plaintiff objects to Paragraph 78 as conclusory, argument, speculation, improper lay opinion, and unsupported by the cited record. *See* Fed. R. Civ. P. 56(c); Local Rule 56.1(a). Defendants did not designate any expert witness, and the deadline for doing so has passed. The proper diagnosis of Plaintiff's burns is topic**

requiring scientific, technical, or other specialized knowledge. Because Dr. Funk testified

only as a lay witness, his testimony on this issue is inadmissible. *See* Fed. R. Evid. 701.

Whether it would be "reasonable" for a patient to not seek consultation with a physician

for burns like those Plaintiff suffered is an issue for a jury. Moreover, in the cited

testimony, Dr. Funk relies on the disputed assumption that Plaintiff's burns were first

degree (see response to ¶ 75, *supra*) and does not specify whether the hypothetical conduct

described in Paragraph 78 would be "reasonable." (Funk Dep. 234:1-235:14.)

STATEMENT OF FACT NO. 79:

        Mr. Cooper did not name any of the Wexford defendants in any grievance that he
filed. Ex. A, pp. 86, 126.

**RESPONSE NO. 79:** Undisputed. Plaintiff did not know the names of any of the Wexford

Defendants when he filed the grievances related to their failure to adequately treat his

burns. (Cooper Dep. 140:5-12.) He learned their names during the litigation of this case.

(Cooper Dep. 140:13-15.)

STATEMENT OF FACT NO. 80:

        The relief requested in all four grievances by plaintiff was that he wanted the F
house water to be turned down. Ex. A, p. 87.

**RESPONSE NO. 80:** Disputed. Plaintiff objects to Paragraph 80 as unsupported by the

cited evidence. In the portion of testimony cited in Paragraph 80, Plaintiff stated that,

among other things, the grievances he filed were about Defendants' failure to provide him

with pain medication. (Cooper Dep. 86:23-87:2 ("Q. Okay. So what you're complaining of

from a medical standpoint in this grievance is that you did not receive pain medication? A.

Correct.") Cooper Dep. 87:21-24 ("Q. Okay. And again, you are receiving -- requesting

medical care in terms of pain medication, true? A. Yes.").) In his June 20, 2011 grievance,

**Plaintiff requested that each individual who denied him medical attention be suspended and pay to him monetary damages. (Exhibit 2.) In his July 5, 2011 grievance, which incorporated by reference his June 20, 2011 grievance, Plaintiff stated "I have yet to receive any medication for my burns." (Exhibit 8.) In his September 1, 2011 grievance, which incorporated by reference his June 20 and July 5, 2011 grievances, Plaintiff stated "I never received any paid medication for my burns." (Exhibit 9.)**

Dated: November 10, 2015               Respectfully submitted,

                                       /s/ Alex J. Maturi

                                       Jon A. Geier
                                       Christopher F. Allen
                                       Alex Maturi
                                       Paul Hastings LLP
                                       71 South Wacker Drive
                                       45th Floor
                                       Chicago, IL  60606
                                       Telephone:  (312) 499-6000
                                       Facsimile:  (312) 499-6100
                                       Email:  alexmaturi@paulhastings.com

                                       ATTORNEYS FOR PLAINTIFF DARNELL
                                       COOPER

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 10th day of November, 2015, I served true and correct copies of **Plaintiff Darnell Cooper's Objections and Responses to Wexford Defendants' Local Rule 56.1(a)(3) Statement of Facts** via Electronic Mail, upon the following counsel of record for Defendants:

Peter James Strauss
Cunningham, Meyer & Vedrine
One East Wacker Drive
Suite 2200
Chicago, IL 60601
(312) 578-0319
pstrauss@cmvlaw.com


 /s/ Alex J. Maturi
Alex J. Maturi
*Attorney for Plaintiff Darnell Cooper*