# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| Darnell Cooper, ) <br> ) <br>     Plaintiff, ) <br> ) <br>     v. ) <br> ) <br> Karyn Morgan, Angelique Matuzas, ) <br> Kent Ocupe, and Stacey Headlee, ) <br> ) <br>     Defendants. ) | No. 12 C 05625 <br><br> Judge Edmond E. Chang |

## MEMORANDUM OPINION AND ORDER

Darnell Cooper, an inmate at Stateville Correctional Center in Illinois, brought this civil-rights lawsuit against four nurses who work at the prison.[1] Cooper alleges that Karyn Morgan, Angelique Matuzas, Kent Ocupe, and Stacey Headlee were deliberately indifferent to his medical needs in violation of the Eighth and Fourteenth Amendments. R. 72, Am. Compl.[2] Now the Defendants move for summary judgment, asserting that Cooper did not suffer from an objectively serious medical condition and that the Defendants were not deliberately indifferent to Cooper's medical needs. R. 167, Defs.' Br. The Defendants also assert that Cooper's

---

[1] The Court has subject matter jurisdiction over Cooper's Section 1983 claim under 28 U.S.C. § 1331.

[2] Citations to the record are noted as "R." followed by the docket number and the page or paragraph number. Citations to the parties' Local Rule 56.1 Statements of Fact are "DSOF" (for Defendants' Statement of Facts) [R. 168]; "PSOF" (for Cooper's Statement of Additional Facts) [R. 175]; "Pl.'s Resp. DSOF" (for Cooper's Response to Defendants' Statement of Facts) [R. 176]; Defs.' Resp. PSOF (for Defendants' Response to Cooper's Statement of Additional Facts) [R. 180].

failure to exhaust all administrative remedies bars his § 1983 claim. *Id*. For the reasons discussed below, the motion is denied.

## I. Background

For purposes of the Defendants' motion, the following facts are viewed in the light most favorable to Cooper (because he is the non-movant), and all reasonable inferences are drawn in his favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Darnell Cooper has been incarcerated at Stateville Correctional Center, a facility run by the Illinois Department of Corrections, since May 2011. R. 168, DSOF ¶ 1. On the night of June 16, 2011, Cooper took a shower, but the water was so hot that he suffered burns to the right side of his back and neck. *Id.* ¶ 38; R. 168 at Exh. A, Cooper Dep. 29:17-21. Cooper was in pain from the burns, but did not see any medical personnel that night. DSOF ¶ 39; R. 176, Pl.'s Resp. DSOF ¶ 39; Cooper Dep. 137:16-22. The following morning, Cooper noticed that his shirt was stained with some type of discharge from the burns. R. 175, PSOF ¶ 2; R. 180, Defs.' Resp. PSOF ¶ 2; Cooper Dep. 40:13-20. His skin was disfigured, discolored, and blistered as a result of the burns. PSOF ¶ 2; Defs.' Resp. PSOF ¶ 2; Cooper Dep. 40:24-41:14. Cooper did not see any medical personnel that day about his burns. DSOF ¶ 41; Pl.'s Resp. DSOF ¶ 41; Cooper Dep. 41:24-43:15.

On June 18, 2011 (two days after suffering the burns), Cooper told Karyn Morgan, a Wexford Health Sources, Inc. nurse who worked at Stateville (Wexford is the private contractor that provides health services at the prison), about his burns. PSOF ¶ 3; Defs.' Resp. PSOF ¶ 3; Cooper Dep. 44:8-19; R. 168 at Exh. B, Morgan

Dep. 12:2-12. At the time, Morgan was conducting a medication "pass," meaning that she was administering medication to inmates in their cells. PSOF ¶ 3; Defs.' Resp. PSOF ¶ 3; Cooper Dep. 44:8-19. Cooper showed her the burns and asked for medical attention, pain medication, and a doctor. PSOF ¶ 3; Defs.' Resp. PSOF ¶ 3; Cooper Dep. 45:10-11, 46:16-18, 47:20-48:1; R. 175-1, Exh. 1, Cooper Decl. ¶ 1. Morgan did not provide any medical attention in response to Cooper's requests. PSOF ¶ 3; Defs.' Resp. PSOF ¶ 3; Cooper Decl. ¶ 1. Later that day, however, a certified medical technician examined Cooper and applied burn cream and bandages to the burns. Cooper Dep. 46:24-47:16; R. 168 at Exh. G, Cooper Med. Rec. at 6.

Two days later, on June 20, Cooper went to the emergency room for his burns and saw Angelique Matuzas, another Wexford nurse who worked at Stateville. PSOF ¶ 4; Defs.' Resp. PSOF ¶ 4; Cooper Dep. 49:23-50:4; R. 168 at Exh. C, Matuzas Dep. 12:15-20. Matuzas changed Cooper's bandages while Cooper told her about the burns. PSOF ¶ 4; Defs.' Resp. PSOF ¶ 4; Cooper Dep. 51:1-10. Cooper also asked the nurse for pain medication and to see a doctor. PSOF ¶ 4; Defs.' Resp. PSOF ¶ 4; Cooper Dep. 51:1-10. Matuzas only replied that the doctor was not in.[3] PSOF ¶ 4; Defs.' Resp. PSOF ¶ 4; Cooper Dep. 51:1-10.

---

[3]The parties dispute whether this visit occurred on June 20 or June 21. *Compare* PSOF ¶ 4, *with* Defs.' Resp. PSOF ¶ 4. Cooper maintains that he saw Matuzas on June 20. Cooper Dep. 49:23-50:4. Cooper's medical record, however, states that he only saw Nurse Matuzas on June 21. Cooper Med. Rec. at 8. Given that the facts must be viewed in the light most favorable to Cooper for purposes of deciding this motion, the Court will assume that Cooper saw Matuzas on June 20.

3

That same day, Cooper filed an emergency grievance with Stateville's Warden about the lack of medical attention he had received for his burns. PSOF ¶ 5; Defs.' Resp. PSOF ¶ 5; R. 175-2, Exh. 2, 6/20/11 Grievance; Cooper Dep. 53:14-24. Cooper did not identify Nurse Morgan (whom Cooper saw on June 18) by name in the grievance, but described her as a "light skinned" woman with "brown eyes" and "blonde hair," who was wearing a "2-piece green nurses outfit." 6/20/11 Grievance.

The next day, on June 21, Cooper saw Nurse Matuzas again for his burns. PSOF ¶ 6; Cooper Dep. 55:23-56:8; Cooper Med. Rec. at 8. As the nurse re-dressed his bandages, Cooper told Matuzas that he was still in pain from the burns. PSOF ¶ 6; Defs.' Resp. PSOF ¶ 6; Cooper Dep. 56:9-22; Matuzas Dep. 64:6-12, 66:8-15. Cooper's medical record states that the nurse cleaned and sterilized Cooper's "scald burn [on the] back of [his] neck [and] right shoulder … ." Cooper Med. Rec. at 8. Once again, Cooper asked for pain medication and to see a doctor. PSOF ¶ 6; Defs.' Resp. PSOF ¶ 6; Cooper Dep. 56:9-22. In response, Matuzas told a security officer that Cooper was "making trouble" and had Cooper escorted from the hospital. PSOF ¶ 6; Defs.' Resp. PSOF ¶ 6; Cooper Dep. 56:9-22.

On June 22, Stacey Headlee, another Wexford nurse who worked at Stateville, removed the bandages covering Cooper's burns. Cooper Dep. 58:21-59:13; R. 168 at Exh. E, Headlee Dep. 24:8-16. The parties dispute whether Headlee applied new bandages to Cooper's burns at this time. *Compare* DSOF ¶ 50, *with* Pl. Resp. DSOF ¶ 50; *see also* Cooper Dep. 59:21-60:2; Cooper Med. Rec. at 5. Cooper

4

again asked to see a doctor and for pain medication, but Headlee refused.[4] Pl.'s Resp. DSOF ¶ 51; Cooper Dep. 59:21-60:10; Cooper Decl. ¶ 2. Cooper's medical record states that Headlee did not observe any redness or blisters where Cooper had been burned. Cooper Med. Rec. at 5.

Around one week later, on June 30, Cooper suffered another burn—this time to his head—while taking a shower. PSOF ¶ 8; Defs.' Resp. PSOF ¶ 8; Cooper Dep. 62:5-12. Cooper could feel the burn, but did not know how severe it was. Cooper Dep. 65:9-21. The next day, Cooper noticed that this burn had caused his skin to peel. PSOF ¶ 9; Cooper Dep. 66:10-21. Later that day, Cooper showed the burn to Nurse Morgan while she was on a medication pass. PSOF ¶ 9; Defs.' Resp. PSOF ¶ 9; Cooper Dep. 66:22-24. Again, he asked Morgan for pain medication and a doctor. PSOF ¶ 9; Defs.' Resp. PSOF ¶ 9; Cooper Dep. 68:5-11. In response, Morgan said she could not do anything for him and walked away. PSOF ¶ 9; Defs.' Resp. PSOF ¶ 9; Cooper Dep. 67:9-22, 68:12-15.

Either later that day (on June 30) or the following day, Cooper showed the burn on his head to Kent Ocupe, yet another Wexford nurse who worked at Stateville. PSOF ¶ 11; Defs.' Resp. PSOF ¶ 11; Cooper Dep. 70:7-21. Ocupe was on a medication pass at the time. PSOF ¶ 11; Defs.' Resp. PSOF ¶ 11; Cooper Dep. 70:7-21. Cooper asked the nurse for medical attention, pain medication, and a doctor.

---

[4]Again, the parties dispute whether this happened on June 21 or June 22. *Compare* PSOF ¶ 7, *with* Defs.' Resp. PSOF ¶ 7. Cooper says that he saw Nurse Headlee for the first time on June 22. Cooper Dep. 59:14-17. Cooper's medical record, by contrast, states that he saw Headlee on June 21. Cooper Med. Rec. at 5. The Court must credit Cooper for purposes of deciding the motion, so the Court will assume that Cooper saw Headlee on June 22.

5

PSOF ¶ 11; Defs.' Resp. PSOF ¶ 11; Cooper Dep. 70:7-21. But Ocupe just walked away without responding. PSOF ¶ 11; Defs.' Resp. PSOF ¶ 11; Cooper Dep. 70:7-21.

Cooper filed a second grievance on July 5, 2011. PSOF ¶ 33; Defs.' Resp. PSOF ¶ 33; R. 175-8, Exh. 8, 7/5/11 Grievance. Once again, Cooper complained about the lack of treatment he received for the burns on his back, neck, and head. 7/5/11 Grievance. Cooper also noted that this was his second grievance and that he had yet to receive pain medication for his burns. *Id.*

The next relevant medical appointment was on July 20, 2011. The parties dispute whether, on that date, Cooper saw Nurse Headlee or someone else. *Compare* DSOF ¶ 65, *with* Pl.'s Resp. DSOF ¶ 65. Cooper admits that he saw a nurse on July 20, but he does not believe it was Headlee. Cooper Dep. 80:2-6. Whoever it was, the nurse who saw Cooper on July 20 noted in his medical record that Cooper's skin on his back and head had healed. Cooper Med. Rec. at 6. Headlee testified at her deposition that she wrote this note in Cooper's medical record. Headlee Dep. 162:17-20.

On September 1, 2011, Cooper submitted a third grievance. PSOF ¶ 34; Defs.' Resp. PSOF ¶ 34; R. 175-9, Exh. 9, 9/1/11 Grievance. Cooper noted that this was the third grievance he had filed related to his burns. 9/1/11 Grievance. He also repeated that he had received inadequate medical attention for his burns and had not received any pain medication. *Id.*

In December 2011, an IDOC employee reviewed Cooper's medical file and submitted a memo to the IDOC's Grievance Office summarizing the medical

attention Cooper received for his burns. PSOF ¶ 35; R. 175-10, Exh. 10, 12/2/11 Grievance Office Memo. A few weeks later, a Grievance Officer reviewed Cooper's grievances and concluded that Cooper "appear[ed] to be receiving appropriate medical care at this time." R. 175-11, Exh. 11, 12/27/11 Grievance Officer's Report. The Chief Administrative Officer concurred. *Id.* Cooper thereafter appealed to the IDOC Administrative Review Board, which concluded that Cooper's "medical needs [were] being addressed by the Stateville Correctional Center Administration, in accordance with established policies and procedures." R. 175-12, Exh. 12, 6/1/12 Admin. Review Board Decision. Cooper of course disagrees, and has brought this deliberate indifference claim against the Defendants. Am. Compl. at 7-9. Cooper alleges that the Defendants denied him access to adequate medical care by, among other things, refusing his requests to see a doctor and refusing to prescribe pain medication. *Id.* at 8. The Defendants now move for summary judgment.

## II. Standard of Review

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make

7

credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Vill. of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

#### A. Exhaustion of Administrative Remedies

The first issue is whether Cooper properly exhausted administrative remedies before bringing this lawsuit. The Prison Litigation Reform Act requires that inmates exhaust all available administrative remedies before filing a Section 1983 action for unconstitutional prison conditions. *Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011) ("The PLRA provides that '[n]o action shall be brought with respect to prison conditions under section 1983 ... until such administrative remedies as are available are exhausted.'" (quoting 42 U.S.C. § 1997e(a)). This means that inmates must "file a timely grievance utilizing the procedures and rules of the state's prison grievance process." *Id.* Section 504.810(b) of the Illinois Administrative Code sets forth the requirements for filing grievances in Illinois state prison:

8

> The grievance shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, were, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code § 504.810(b).

The Defendants argue that Cooper failed to exhaust all administrative remedies because his grievances did not identify the Defendants by name or describe their conduct. Defs.' Br. at 15. The Defendants also argue that Cooper only asked that Stateville lower the water temperature in the showers, so he was not really complaining about inadequate medical care. *Id.* Neither argument works. Taking the relief-sought argument first, even the IDOC administrators handling Cooper's grievance did not interpret his grievances as targeting the shower's water temperature. The IDOC Administrative Review Board ultimately denied Cooper's grievance on appeal after finding that "[Cooper's] *medical needs* are being addressed by the Stateville Correctional Center Administration, in accordance with established policies and procedures." 6/1/12 Admin. Review Board Decision (emphasis added). Other responses to the grievances also referred to the medical condition and medical treatment, and rejected the need for more treatment. *See* 12/2/11 Grievance Office Memo (IDOC employee's memo to the Grievance Office states that Cooper's burns were "healing well"); 12/27/11 Grievance Officer's Report (Grievance Officer finds that Cooper "appear[ed] to be receiving appropriate medical care").

9

The IDOC's own responses to the grievances show that Cooper exhausted the claim. "Where prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense." *Maddox*, 655 F.3d at 722; *see also Conyers v. Abitz*, 416 F.3d 580, 585 (7th Cir. 2005) ("[A] procedural shortcoming … amounts to a failure to exhaust only if prison administrators explicitly relied on that shortcoming."); *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004) ("[W]hen a state treats a filing as timely and resolves it on the merits, the federal judiciary will not second-guess that action, for the grievance has served its function of alerting the state and inviting corrective action."). The IDOC addressed whether Cooper received adequate medical care, so his grievances "provid[ed] prison officials a fair opportunity to address his complaint." *Maddox*, 655 F.3d at 722 ("That Maddox didn't specifically name the defendants in the grievance was a mere technical defect that had no effect on the process and didn't limit the usefulness of the exhaustion requirement.").

On the deficient-identification argument, the Defendants' assertion that "grievances *must* include 'the name of the person who is the subject of or is otherwise involved with the complaint,'" Defs.' Br. at 15 (emphasis in original), is wrong—and is beside the point here. It is wrong because the relevant regulation, quoted above, allows an inmate to describe the targeted employee if the name is not known. 20 Ill. Admin. Code § 504.810(b).[5] And it is beside the point because the

---

[5] Cooper did that: he described Nurse Morgan as a "light skinned" woman with "brown eyes" and "blonde hair," who was wearing a "2-piece green nurses outfit." 6/20/11

10

IDOC Administrative Review Board did not reject the grievances on the grounds that Cooper had inadequately identified or described those who allegedly did not provide adequate medical care. That means there is no problem with exhaustion. *Maddox*, 655 F.3d at 722; *Conyers*, 416 F.3d at 585.

### B. Deliberate Indifference to Serious Medical Needs

Moving past exhaustion and on to the merits of the deliberate-indifference claim, the substantive standard is this: prison officials violate the Eighth Amendment when they manifest a "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Defendants first contend that they are entitled to summary judgment on Cooper's claim because his burns did not amount to a serious medical condition. Defs.' Br. at 3-6. Second, the Defendants argue that the totality of medical care that Cooper received refutes any claim that the Defendants were deliberately indifferent to his burns. *Id.* at 6-14. The record evidence, however, would allow a reasonable jury to find that Cooper has proven both the objective element (the medical need was serious) and the subjective element (the Defendants consciously disregarded the need).

#### i. Serious Medical Need

A "sufficiently serious" medical condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Foelker v. Outagamie Cnty.*, 394 F.3d 510, 512 (7th Cir. 2005) (quotation omitted). The Defendants argue that

---

Grievance. In the second and third grievances, Cooper referred back to this initial grievance, and thus referred back to the description. *See* 7/5/11 Grievance; 9/1/11 Grievance.

Cooper did not suffer from a serious medical condition because he only suffered, in the defense's view, a "minor burn" that caused only "minimal" pain or damage. Defs.' Br. at 3-4. To support this argument, the Defendants point to the June 18, 2011 (two days after the burn) entry in Cooper's medical records; in this entry, a certified medical technician noted that Cooper's skin had peeled but that it was not blistered.[6] *Id.* at 4; Cooper Med. Rec. at 6. But there is evidence that Cooper suffered more than just a "minor burn" and felt just "minimal pain": Cooper testified at his deposition that his skin was blistered the morning after he suffered burns to his back and neck from the shower water. Cooper Dep. 40:24-41:14. He also testified that his skin was disfigured and discolored as a result of the burns. *Id.* And Cooper has consistently maintained that he complained to each defendant about the burns and the serious pain he was feeling. *See, e.g.*, Cooper Dep. 38:18-19, 51:1-10, 56:9-22, 70:10-21, 99:14-21; Cooper Decl. ¶ 1. Sure, the description of a medical condition in medical records is solid evidence for the defense, but medical records are not perfect and the jury would be entitled to credit Cooper's testimony. More importantly for the here and now, on a summary judgment evaluation, the Court must credit Cooper's testimony and give him the benefit of reasonable inferences.

---

[6]The Defendants also cite the testimony of a Wexford doctor, Dr. Arthur Funk, to argue that Cooper did not suffer from an objectively serious medical condition. Defs.' Br. at 5 ("Going even further, Dr. Funk, the regional medical director at Wexford and licensed physician testified that the condition that Mr. Cooper suffered was not one that any reasonable person would even go to see a physician."). But the Defendants did not disclose Dr. Funk as an expert; rather, he was designated as a Rule 30(b)(6) witness. Indeed, the defense came right out and said that there would be no expert discovery. R. 161. So Dr. Funk's medical-expert testimony about the severity of Cooper's burns and the treatment Cooper received is not admissible as expert testimony. *See Triblle v. Evangelides*, 670 F.3d 753, 758 (7th Cir. 2012).

There is even more evidence that generates a genuine factual dispute on whether Cooper suffered from a sufficiently serious medical condition. For example, Nurse Headlee testified at her deposition that Cooper's skin was indeed discolored as a result of the burns. Headlee Dep. 95:15-21, 97:15-18. In January 2012, six months after Cooper suffered the burns, a doctor observed that Cooper had a scar above his right scapula (that is, his shoulder blade). Cooper Med. Rec. at 26. Even the IDOC's Nursing Treatment Protocols for treating burns—which Wexford has adopted for its own employees[7]—acknowledges that "superficial burns … are painful." R. 175-7, Exh. 7, IDOC Nursing Treatment Protocols. What's more, there is case law recognizing that pain from a skin burn is a serious medical condition. *See O'Malley v. Litscher*, 465 F.3d 799, 801, 805 (7th Cir. 2006) (assuming, for summary judgment purposes, that plaintiff suffered from a serious medical condition—despite a prison doctor's affidavit to the contrary—after the plaintiff sustained burns on his back as a result of lying in his own vomit).

In addition to arguing that Cooper only suffered from a "minor burn" that caused "minimal" pain, the Defendants also argue that Cooper's burns were not serious because they "healed without the use of any medication and without the need for care by a physician." Defs.' Br. at 4. But the issue here is not whether Cooper's burns properly healed in the long run; rather, it is whether Cooper

---

[7]Dr. Funk, Wexford's 30(b)(6) witness, admitted as much during his deposition. *See* R. 168 at Exh. F, Wexford 30(b)(6) Dep. 116:5-14 (Q: So you're saying that there is no Wexford protocol for nursing assessment protocols that relate to Stateville that are Wexford protocols? A: Wexford has adopted the state. So therefore they are Wexford's protocols. They were formulated by the state, they've been adopted, and they're implemented by Wexford, utilized by Wexford as their treatment protocols, although they were actually devised by the Department of Corrections.").

13

suffered prolonged and unnecessary pain from the burns and whether this pain warranted medication and a doctor's attention. *See Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996) ("The issue here is not disability. It is whether the plaintiffs were in sufficient pain to entitle them to pain medication within the first 48 hours after the beating. That was an issue for the jury."); *see also Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1039-40 (7th Cir. 2012) ("[D]eliberate indifference to *prolonged, unnecessary pain* can itself be the basis for an Eighth Amendment claim" (emphasis added)). And, as noted above, there is more evidence that Cooper's burns were serious: he has a scar on his right shoulder from the burns. Cooper Dep. 11:1-13. Cooper's medical record corroborates the presence of the scar as late as six months after the burns. Cooper Med. Rec. at 26. Viewing all of this evidence in the light most favorable to Cooper, a jury could conclude that the burns meet the definition of a "serious" medical condition.

### ii. Deliberate Indifference

The next question is whether Cooper has enough evidence to get to a jury on the subjective element of a deliberate-indifference claim, meaning did the Defendants have a "'sufficiently culpable state of mind.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In order to be deemed deliberately indifferent, the defendant must have "kn[own] of a substantial risk of harm to the inmate and disregarded the risk." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). An inadvertent mistake or negligence is not enough. *Estelle*, 429 U.S. at 104; *see also Baines v. Washington*, 1995 WL 330634, at

14

*4 (N.D. Ill. June 2, 1995). "But a prisoner also is not required to show that he was literally ignored." *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). That is, "a doctor's choice of the 'easier and less efficacious treatment' for an objectively serious medical condition can still amount to deliberate indifference for purposes of the Eighth Amendment." *Id.* (quoting *Estelle*, 429 U.S. at 104 n.10).

The crux of the Defendants' argument here is that the totality of care Cooper received for his burns forecloses any claim that the Defendants were deliberately indifferent to Cooper's medical needs. Defs.' Br. at 6-12 ("Based on the totality of the medical care outlined in the Defendants' Rule 56.1 Statement of Facts, defendants never acted with deliberate indifference toward Plaintiff's medical needs."). The Defendants essentially chalk Cooper's claim up to a mere disagreement about the care that they provided him.[8] *Id.* at 11 ("Mr. Cooper did not agree with the care that was provided him and he wanted something else … .").

The overarching problem with the defense's argument is that it relies on an assumption that cannot be made at this summary-judgment stage: that Cooper supposedly did not complain about pain from his burns. But a reasonable jury could

---

[8]The Defendants offer a few other arguments in support of summary judgment, but the arguments fail to view the evidence in the light most favorable to Cooper. For example, the Defendants point out that "the three healthcare providers that saw Mr. Cooper … did not note that Mr. Cooper complained of pain at the time of their assessments." Defs.' Br. at 9. But Cooper testified that he did complain about his pain to each Defendant. *See* Cooper Dep. 45:3-6, 47:20-48:1, 51:1-10, 56:9-22, 59:21-60:10, 67:9-68:15, 70:7-21. This testimony must be credited and it creates a genuine fact dispute on whether the Defendants knew he was in pain. The Defendants also argue that Cooper had access to pain medication from the commissary. Defs.' Br. at 9. But again, Cooper's testimony creates a genuine fact dispute on this issue. *See* Cooper Dep. 48:16-18. Finally, the Defendants argue that Nurses Morgan and Ocupe had no duty to assess Cooper's burns while handing out medication to inmates. Defs.' Br. at 7; DSOF ¶ 25. But Dr. Funk admitted that it would be "totally inappropriate" to ignore an inmate's request for medical help during a medication pass. *See* Wexford 30(b)(6) Dep. 197:22-198:3.

find that the record evidence refutes the Defendants' position: Cooper testified at his deposition that he told each defendant he was in pain and wanted to see a doctor, and that each defendant ignored his complaints.[9] *See* Cooper Dep. 45:3-6, 47:20-48:1 (Nurse Morgan ignores Cooper's request for pain medication during a medication pass); *id.* at 51:1-10 (when Cooper asked for pain medication and a doctor, Nurse Matuzas only responds that the doctor was not in); *id.* at 56:9-22 (Matuzas tells Cooper he is "making trouble" in response to Cooper's request for pain medication and a doctor); *id.* at 59:21-60:10 (Nurse Headlee refuses to give pain medication or place Cooper on sick call); *id.* at 67:9-68:15 (Morgan ignores Cooper's request for pain medication and a doctor after suffering burns to his head); *id.* at 70:7-21 (Nurse Ocupe walks away from Cooper in response to Cooper's request for pain medication and a doctor). Cooper then reaffirmed much of this testimony in his declaration. *See* Cooper Decl. ¶¶ 1, 2.

This evidence, which must be credited at this stage, is enough for a reasonable jury to find that the Defendants were aware that Cooper was in pain and refused to take even basic steps to alleviate the pain, such as administering

---

[9]Both parties agree that at least Nurse Matuzas applied burn cream and bandages to Cooper's burns. *See* PSOF ¶¶ 4, 6; Defs.' Resp. PSOF ¶¶ 4, 6. And Cooper even testified that his burns felt better (but that the pain remained) after Matuzas applied the cream. Cooper Dep. 139:2-14. But the "receipt of some medical care does not automatically defeat a claim of deliberate indifference … ." *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007). And as mentioned before, Cooper is not required to show that the Defendants wholly ignored him. *See Berry*, 604 F.3d at 441 ("But a prisoner also is not required to show that he was literally ignored … a doctor's choice of the 'easier and less efficacious treatment' for an objectively serious medical condition can still amount to deliberate indifference for purposes of the Eighth Amendment."). Here, there are enough facts (when viewed in the light most favorable to Cooper) to infer deliberate indifference given that each defendant ignored Cooper's requests for pain medication and for a doctor assessment.

pain medication and placing Cooper on sick call to see a doctor. *See Berry*, 604 F.3d at 441 (holding that defendant's "obdurate refusal" to agree to inmate's "modest request for treatment"—a basic dental examination—was sufficient to defeat defendant's motion for summary judgment); *Perez v. Fenoglio*, 792 F.3d 768, 778 (7th Cir. 2015) (observing that "the ease of providing treatment" may evidence deliberate indifference); *Smith*, 666 F.3d at 1039-40 (noting that "deliberate indifference to prolonged, unnecessary pain can itself be the basis for an Eighth Amendment claim"). From this point of view, the Defendants' refusal to permit Cooper "such [] basic treatment option[s] could be characterized as a 'gratuitous cruelty' forbidden by the Eighth amendment." *Berry*, 604 F.3d at 441.

There is more. Viewing the evidence in Cooper's favor, the Defendants also failed to follow the IDOC's Nursing Treatment Protocols when responding to Cooper's complaints of pain.[10] *See Mata v. Saiz*, 427 F.3d 745, 756 (10th Cir. 2005) (health care protocols "provide circumstantial evidence" that prison medical personnel "knew of a substantial risk of serious harm"); *Phillips v. Roane Cnty., Tennessee*, 534 F.3d 531, 542-43 (6th Cir. 2008) (failure to follow hospital protocols supported finding that defendant disregarded plaintiff's need for medical attention).

---

[10]To be sure, the Defendants' alleged failure to follow the Nursing Treatment Protocols does not by itself establish that they violated the Eighth Amendment. *Cf. Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) (holding that Chicago Police Department's General Order pertaining to the use of force "shed[] no light on what may or may not be considered 'objectively reasonable' under the Fourth Amendment"). But the Nursing Treatment Protocols can be evidence of what would be a reasonable response to complaints of burn pains. *See Mata v. Saiz*, 427 F.3d 745, 756 (10th Cir. 2005) ("While published requirements for health care do not create constitutional rights, such protocols certainly provide circumstantial evidence that a prison health care gatekeeper knew of a substantial risk of serious harm.").

The Nursing Treatment Protocols for treating burns require that a nurse refer a patient with any kind of burn to a physician, physician's assistant, or nurse practitioner. IDOC Nursing Treatment Protocols. If a patient has "anything greater than a minor burn," then the nurse must immediately refer the patient to a physician. *Id.* If the patient has "superficial or minor burns," then the nurse must schedule the patient for the next available clinic. *Id.* Finally, for superficial or minor burns, the Nursing Treatment Protocols further require that the nurse administer pain medication to the patient, reassess the patient in 2-4 hours, and after that call a doctor if the patient is still in pain. *Id.* Yet despite these Protocols, the Defendants never gave Cooper pain medication or placed him on sick call for his burns. In sum, based on the summary judgment record, a jury could reasonably find that the Defendants were deliberately indifferent by refusing Cooper's requests for pain medication and to see a doctor.

## IV. Conclusion

When viewed in Cooper's favor, there is enough evidence for a jury to find that the burns he suffered qualified as a serious medical need, and that the Defendants consciously disregarded his complaints of pain and the need to see a doctor for the burns. The motion for summary judgment, R. 166, is denied.

ENTERED:

     s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 28, 2016